[Civ. No. 17911. Second Dist., Div. Three. Dec. 27, 1951.]

FORMOSA CORPORATION (a Corporation) et al., Plaintiffs and Respondents, v. MARY PICKFORD ROGERS, Appellant; SAMUEL GOLDWYN, Defendant and Respondent.

O'Melveny & Myers, Jackson W. Chance and W. B. Carman for Appellant.

Loeb & Loeb, Herman Selvin and George Slaff for Respondents.

WOOD (Parker), J.—The Formosa Corporation, a corporation, commenced an action against Mary Pickford Rogers and Sylvia Stanley for partition of 17.4 acres of land, upon which there were buildings and other improvements used in making motion pictures. It was alleged in the complaint that the plaintiff and the defendants owned the property as tenants in common; plaintiff owned an undivided 19/80 of the property; defendant Rogers owned an undivided 41/80 of the property; defendant Stanley owned an undivided 20/80

of the property; and that Samuel Goldwyn owned certain buildings which were upon the property. Defendant Rogers, in answering the complaint, admitted that she owned 41/80 of the property, and she denied that Samuel Goldwyn owned certain buildings upon the real property but she alleged that his rights, if any, in certain buildings thereon were set forth in leases referred to in the complaint. Defendant Stanley, in answering the complaint, denied that Samuel Goldwyn owned any buildings upon said property except as provided in leases referred to in the complaint. Defendant Rogers filed a cross-complaint wherein she named the plaintiff Formosa Corporation, defendant Stanley, and Samuel Goldwyn as cross-defendants, and wherein she asked that the court quiet her title against Samuel Goldwyn with respect to all buildings and permanent improvements upon said property. The cross-defendants Formosa Corporation and Samuel Goldwyn, in answering the cross-complaint, alleged that Samuel Goldwyn is the owner of certain buildings and improvements upon said property by virtue of the provisions of a supplemental lease dated February 4, 1933, as thereafter modified and supplemented, and that cross-defendant Samuel Goldwyn has the right, under certain conditions and within 30 days after the expiration of his lease on said property, to elect to remove said buildings and improvements.

About a year after the original complaint had been filed, the Samuel Goldwyn Productions, Inc., purchased defendant Stanley's 20/80 interest in said property. On January 25, 1949, an amended and supplemental complaint for partition of real property was filed in which the Samuel Goldwyn Productions, Inc., was joined as plaintiff with the Formosa Corporation. It was alleged in the amended and supplemental complaint that a partition of the real property in kind would render each of the parts so divided useless for the purposes of conducting thereon a motion picture studio, and would substantially reduce the value of each of said parts as compared with its proportionate value as a part of said real property as a whole; that the real property is so situated and the permanent construction thereon is such that physical partition of the property cannot be made without great prejudice to the owners; and that it is necessary that the property be sold and the proceeds of such sale divided among the owners as their interest shall appear. It was also alleged in the amended and supplemental complaint that certain buildings, im-

provements and personal property on the land were owned by Samuel Goldwyn.

Defendant Rogers, in answering the amended and supplemental complaint, denied that Samuel Goldwyn is the owner of any buildings on the land, and denied that he has any right to remove any buildings, improvements or any other property from the land and denied that the property could not be partitioned in kind without great prejudice to the owners thereof. As an affirmative defense, she alleged in that answer that Samuel Goldwyn is the owner of all the issued and outstanding stock of the Formosa Corporation and is the owner of all the issued and outstanding stock of Samuel Goldwyn Productions Inc., except 20 per cent of one class of the stock which has no voting rights; that said Goldwyn controls all the affairs and business of both said plaintiffs and that he is the *alter ego* of said two plaintiffs, and unless he is treated as the *alter ego* of said two corporations injustice will result to the defendant. As another affirmative defense, she alleged therein that the plaintiffs had failed to join as a defendant in the action a necessary party defendant, to wit: Samuel Goldwyn.

Samuel Goldwyn was made a party defendant in the action before evidence was introduced. In his answer to the amended and supplemental complaint he admitted all the allegations of that complaint; he alleged that he is the successor in interest of the lessee named in the lease, referred to in said complaint, and as such is the owner of the rights and options granted to the lessee, including the right to remove all personal property, equipment, and certain buildings and improvements on the premises.

Mr. Goldwyn and the plaintiffs Formosa and Goldwyn Productions, Inc., specified in their pleadings numerous items of property which they claimed Goldwyn had the right to remove. The property which they claimed he had a right to remove may be referred to as three classes of property as follows: (a) 146 items of claimed "new buildings and improvements"; (b) personal property not affixed to the land or improvements thereon; (c) property affixed to the land or improvements thereon. With respect to the said 146 items in class "(a)" claimed as "new buildings and improvements," Goldwyn conceded during the trial that all of said items except 11 were not removable by him. The court decided that three of said 11 remaining items were not new buildings and improvements and were not removable by Goldwyn. It was

adjudged that the eight remaining items were removable. With respect to the property in said class "(b)," personal property not affixed to land or improvements, defendant Rogers, during the trial, waived any objection to removal of this kind of property within the time limited by the 1933 modification of the lease. This property, therefore, is not in controversy on appeal. With respect to the property in said class "(c)," property affixed to land or improvements, defendant Rogers, during the trial, conceded that if Goldwyn is not in default under the 1933 lease and the 1933 modifying agreement the certain affixed property involved here, except property so affixed that its removal could not be effected without substantial injury to the premises, is removable by Goldwyn within the time limited by the 1933 modifying agreement. A considerable part of the affixed property is in controversy on this appeal.

In order to ascertain the extent of the property to be partitioned, it was necessary to determine whether Goldwyn was in default under the provisions of the lease. Appellant (defendant Rogers) asserts that Goldwyn was in default because he failed to obtain building permits and certificates of occupancy, and he failed to submit building plans and specifications to the lessors for their approval. The court made findings (hereinafter stated more fully) that Goldwyn was not in default.

The controversy, with respect to partition, was whether the partition should be by sale, or in kind, or by an alternative form of decree ordering a sale for not less than a certain price and if that price could not be obtained then ordering a division of the property in kind. The court found that partition in kind could not be made without great prejudice to the cotenants.

It was adjudged that Formosa, Goldwyn Productions, Inc., and Rogers were owners in fee simple as tenants in common of the real property in undivided proportions as follows: Formosa, 19/80; Goldwyn Productions, Inc., 20/80; Rogers, 41/80. It was also adjudged that Goldwyn is the owner of, and has the right to remove, the following described eight items of property which are on said real property: stage 8 and everything therein or affixed thereto; feeder lines to stage 8; soloists booth located on stage 7; set storage sheds along west fence; new meter on water line to outdoor tank; three camera vault buildings; housing for ice machine equipment; bulletin boards on east side of stage 5. It was also adjudged that

Goldwyn had the right to remove, within 30 days after November 21, 1949, (1) all personal property of every sort now, or hereafter placed by Goldwyn, on the real property, which is not affixed to some building; and (2) all furniture, machinery and equipment of every sort now, or hereafter placed by Goldwyn, on the the real property, regardless of whether any of it is affixed to any building or structure, excepting only the items set forth in finding XV (which finding relates to the items claimed by Goldwyn in Exhibit 29, hereinafter referred to). It was also adjudged that in exercising said right of removal Goldwyn must use reasonable care to cause as little damage as possible to the premises, but is not otherwise obligated to restore the real property or any structure thereon to the condition it was in before "any such removal"; and that any item of property which he does not remove becomes, on expiration of the time for removal, the common property of Formosa, Goldwyn Productions, Inc., and Rogers as tenants in common in the same respective undivided proportions as they own the real property. It was ordered that said real property be sold at private sale, and that the proceeds of the sale, after deducting expenses, should be divided among Formosa, Goldwyn Productions, Inc., and Rogers in the same proportions as they own the real property. Three referees were appointed to conduct the sale, and they were directed not to accept any bid for the real property in an amount less than $1,500,000 without first reporting to, and receiving such instructions as may then be given by, the court. The court expressly reserved jurisdiction for the purpose of receiving and acting upon reports from the referees, directing and instructing the referees, and ordering them to sell said real property in parts and to make terms of sale different from those theretofore fixed in the interlocutory judgment.

Defendant Rogers appeals from certain portions of the interlocutory judgment of partition, which portions are to the effect as follows: (1) that Goldwyn is the owner of the described eight items of property on said real property; (2) that Goldwyn has the right to remove said eight items of property and all other personal property of any kind now or hereafter placed on the property by Goldwyn, whether or not the property is affixed to a building or structure; (3) that Goldwyn is not required to restore the real property or any building or structure to the condition it was before any such removal; (4) that the property be sold in its entirety and the proceeds divided among the three owners; (5) that certain persons

are appointed referees and directed not to sell the property for less than $1,500,000; and (6) that the court reserved certain jurisdiction with respect to instructing the referees.

In 1926 the Pickford-Fairbanks Studios leased the property to United Artists Studios Corporation, Ltd. Under that lease all the buildings and other improvements were owned by the lessee, but nothing was said therein about the ownership of property other than buildings and improvements; and it was stated therein that upon the expiration of the lease, provided the lessee had complied with every covenant, the lessee might remove, within 60 days, all the improvements and personal property placed on the premises by the lessee. In 1928 the lease was amended to provide that all buildings and improvements should become a part of the realty upon expiration of the lease, and the provisions of the 1926 lease which permitted removal of improvements were cancelled. On February 4, 1933, Miss Pickford and Douglas Fairbanks, Sr., (successors to the original lessor and referred to in the lease as lessor) entered into a supplemental lease with the United Artists Studios Corporation (the name of the lessee had been changed by omitting "Ltd."). That lease recited that the 1926 lease and the 1928 amendment thereto terminated on February 4, 1933, and that the 1933 lease was substituted therefor. Under that lease all buildings and improvements and all personal property were owned by the lessee and should not become a part of the realty, provided, however, that all buildings and improvements should become a part of the realty at the expiration of the lease and belong to the lessor, and that all personal property and replacements, which formed part of lessee's plant account (as then shown by lessee's books) should become the property of the lessor upon expiration of the lease. That lease was modified on December 7, 1933, to provide that all the personal property and replacements forming part of the lessee's plant account (referred to as "old personal property") and all other personal property, and all buildings and improvements erected on the premises after February 4, 1933, shall be the sole and separate property of lessee; and that the lessee, *if not then in default under said lease*, shall have the right to remove all of said personal property (including the "old personal property"), and all such *new buildings or improvements* at any time during the term of the lease or within 30 days after the termination thereof; and that all such personal property and new buildings or improvements not so removed within such 30

days shall become the property of the lessor. It therefore appears that under the 1933 lease as modified, the lessee had the right to remove certain personal property, buildings and improvements within 30 days after termination of the lease if he was not then in default.

In 1937 Samuel Goldwyn, Inc., Ltd. (a California corporation), acquired all the stock of the lessee United Artists Studios Corporation. Thereafter the name of said lessee was changed to Samuel Goldwyn Studios (a corporation). In 1944 Samuel Goldwyn personally acquired all the assets of the Samuel Goldwyn Studios, and thereafter he was the lessee. From 1933 to 1949 the lessee constructed buildings, additions to existing buildings and structures, and made other improvements upon the premises.

The 1933 lease also provided that the lessee agrees that all additions, alterations, new buildings or improvements thereafter constructed upon the premises shall be made in strict conformity with the laws and ordinances in force in the city and the county of Los Angeles. It also provided therein that the lessee agrees that before commencing to make alterations or to construct new buildings, the plans and specifications therefor must be approved in writing by the lessor.

The land involved here is bounded on the north by Santa Monica Boulevard, on the east by Formosa Street and on the west by Poinsettia Street. Approximately the south half of the land is in the city of Los Angeles and approximately the north half is in an unincorporated part of the county of Los Angeles. The boundary line between the part of the land in the city and the part in the county is about midway between, and parallel with, the north and south boundaries of the property.

Under provisions of the city and county ordinances, permits were required to be obtained prior to the construction of many of the 146 items of "new buildings and improvements" which the lessee built upon the premises after making the lease in 1933. Also under such ordinances, certificates of occupancy were required for some of those items. As to many of those items, it appears that the lessee did not obtain such permits and certificates. It also appears that the lessee did not obtain the lessor's approval of plans and specifications for the construction of many of said 146 items. With reference to the eight items of property which the court found to be removable by the lessee, it appears that the lessee did not obtain the lessor's approval of plans and specifications for

the construction of stage 8, the set storage sheds, and the three camera vault buildings.

Appellant contends, as above stated, that the lessee was in default under the provisions of the lease because, in connection with the construction of new buildings and improvements, he did not obtain building permits and certificates of occupancy as required by the city and county ordinances, and because he did not obtain the lessor's approval of plans and specifications as required by the lease; that the default was not excused or condoned, and since the lessee was in such default, he was not entitled to remove any of the property which he claims.

The court found that the lessee had performed all the terms and covenants of the lease on his part to be performed; that he was not in default; that it was not the intention of the parties to the lease that the lessee should be obligated, so far as the lessors were concerned, to obtain building permits or certificates of occupancy, or that the lessee should be required to obtain the lessors' approval of plans or specifications for any new building or addition except when plans or specifications were in fact prepared therefor; that under the lease the lessee had the right to remove certain ''old buildings'' from the premises, but that by reason of the lessee's election, during the trial, not to exercise that right he does not have the right to remove any of the old buildings. The court further found (in paragraph XVIII of the findings) that defendant Rogers and her colessor had knowledge of the placement of new buildings and improvements on the premises during the time of the placement or shortly thereafter, and neither objected to the placement or the continuance in place of any such new building or improvement, or objected to the failure to submit or have approval of any plans or specifications therefor; that on the contrary, the lessors, with such knowledge, (1) acquiesced in such placement of new building and improvements, made use thereof personally, and accepted them as having been placed in substantial compliance with the lease; (2) accepted, without objection, the rent required to be paid for the real property on which the improvements were placed; (3) acquiesced in the exercise by the lessee of options to extend the term of the lease; (4) consented to various assignments of the lease, including an assignment to Goldwyn; (5) agreed to various changes in the provisions of the lease; (6) permitted the lessee to erect various new buildings and improvements without requiring strict performance

of the provisions claimed to have been violated by the lessee; (7) and did not request the lessee to remove any such new building or improvement, but they insisted, and appellant still insists, that such buildings and improvements remain permanently on the real property. The court further found that by reason of the foregoing facts, found in said paragraph XVIII, the lessors waived any right to prevent the lessee from removing the new buildings and improvements or any of the equipage; and that they are now estopped from asserting that the lessee (Goldwyn or his predecessor lessee) was in default under the 1933 lease or that the lessee's right to remove any of the new buildings or improvements or equipage has been lost or is unenforceable by reason of any such claimed default. The court also found that to the extent that the provisions of the 1933 lease, relating to the lessee's right to remove new buildings, improvements or equipage, are conditioned upon the absence of default on the part of the lessee, it was the intention of the parties to the lease that said provisions, to that extent, should be a deterrent to any default by the lessee and should be a penalty against the lessee for any such default; that the damage resulting from a violation of said provisions would not be impracticable or extremely difficult to fix; that to enforce said default provisions would bring about, regardless of the extent of any damage caused by the default, the forfeiture of all of Goldwyn's right and interest in the new buildings, improvements and equipage, the value of which equipage alone is in excess of $1,000,000; that appellant has not been damaged by the placement of the new buildings or improvements on the real property, or by the failure to obtain her approval of the plans or specifications, or to obtain building permits or certificates of occupancy.

Appellant contends that the findings (1) that she waived any right to prevent Goldwyn from removing the property he claims, and (2) that she is estopped to claim that he is in default, are not supported by the evidence. The findings with respect to waiver and estoppel pertain to the lessee's failure to obtain building permits, occupancy certificates, and lessor's approval of plans and specifications. She argues that waiver or estoppel must be based upon actual knowledge on the part of the person against whom the waiver is sought to be established, and that there was no evidence that she (appellant) had any knowledge that the buildings and improvements were not constructed in compliance with the ordinances. The only asserted defaults, as above stated, are that the lessee

did not obtain building permits or certificates of occupancy and he did not submit plans or specifications to the lessor for approval. The lease provisions which appellant claims were violated had as their object the protection of the lessor against undesirable, improper or unlawful construction. There was no evidence that any of the construction was undesirable, or in violation of building or safety laws or ordinances, or that building permits or certificates of occupancy would not be or would not have been issued for any of the construction. As above stated, the court found that appellant had knowledge of the construction work on the premises at the time the work was being done or shortly thereafter, and that she did not object to the construction work. Most of the buildings and improvements involved here were placed on the premises during the years from 1933 to and including 1939 and from 1944 to and including 1948. During those times appellant visited the premises frequently, and the extensive construction work was visible and much of it was near appellant's office on the premises or near the studio dining room where she usually ate lunch. Mr. McKay, who was her general bookkeeper, was on the premises almost daily from 1926 until his death on December 5, 1939. One of his duties was to inform himself concerning her affairs and business and to communicate that information to her. He inquired frequently about the construction work which was being done. He was in and about stage 8 during its construction. He requested that certain offices in one of the buildings be remodeled, and he was present while that remodeling work was being performed. For approximately three years next preceding his death he and another person, acting jointly, were her attorneys in fact. The court could have inferred that her said agent performed his duty and conveyed information to her regarding the construction work. Also the court could have inferred that she was in possession of sufficient facts regarding the extensive construction work to put her on inquiry concerning compliance with building ordinances. In view of the nature, visibility and location of the buildings and improvements which were being constructed, the appellant's frequent visits to the property, her duty to inquire regarding the lessee's compliance with the lease, the duty of her agent (who was on the premises almost daily) to obtain information and communicate it to her, and in view of all the other evidence, the court could have inferred that she had actual knowledge as to whether or not the lessee had complied with

building ordinances. As to the matter of her approval of plans and specifications, it is clear that she had actual knowledge as to whether or not the lessee submitted plans and specifications to her and as to whether or not she approved them.

There was not evidence that appellant ever made objection to the lessee regarding the matter of obtaining building permits or certificates of occupancy, and there was no evidence that she ever objected to the lessee's failure to submit plans and specifications for her approval. She never objected to the construction of any of the buildings or improvements. On the contrary, it appears that over a period of many years she acquiesced in the construction of the buildings and improvements upon the premises, and she acquiesced in the exercise by the lessee of options to extend the term of the lease, and she consented to assignments of the lease. Her indifference at all times, prior to the commencement of this action, with respect to the permits, certificates, and plans and specifications indicates that she did not regard the failure to obtain permits or certificates or her approval of plans and specifications as a breach of the lease. Also her present insistence that the buildings and improvements remain upon the premises is inconsistent with the idea that the construction of some of them, without permits or her approval of plans and specifications, was a breach of the lease. The findings as to waiver and estoppel are supported by the evidence.

Appellant also contends that the court erred in adjudging that the lessee was not required to restore the real property to the condition it was in before "any such removal." There was no express provision in the lease that, in the event the lessee exercised the right to remove property from the premises, the lessee should restore the premises to the condition the premises were in before the removal of property which had been constructed or placed thereon. Appellant argues that there is an implied covenant on the part of the lessee to restore the premises in the event the lessee was entitled to and did exercise the right of removal. The 1926 lease contained an express covenant to restore the premises, but the 1933 lease as modified in 1933 omitted such a provision. In *Cousins Inv. Co.* v. *Hastings Clothing Co.*, 45 Cal. App.2d 141, it was said at page 143 [113 P.2d 878] : "It may be stated generally that implied covenants are not favored in the law; and courts will declare the same to exist only when there is a satisfactory basis in the express contract of the parties which makes it necessary to imply certain duties and

obligations in order to effect the purposes of the parties to the contract made.'' It was contemplated by the parties to the lease herein that the lessee would construct various buildings and improvements on the premises. It appears that the lease was carefully prepared with the intention of expressing the complete agreement. Under the circumstances here, the court did not err in deciding that there was no implied covenant to restore the premises.

 Appellant also contends that the court erred in finding (1) that a partition of the real property in kind cannot be made without great prejudice to the owners and that it is necessary that the property be sold; and (2) that it is not inequitable to have a sale of the property. Section 763 of the Code of Civil Procedure provides: ''If it appears . . . that the property . . . is so situated that partition can not be made without great prejudice to the owners, or where property is subject to a life estate and the remainder is a contingent remainder, the court may and in the latter case must order the sale thereof; . . . .'' A tenant in common has an absolute right to partition. (*De Roulet* v. *Mitchel*, 70 Cal. App.2d 120, 123 [160 P.2d 574].) The law favors partition in kind rather than partition by sale, and a sale will be ordered only when it is necessary to prevent great prejudice to the owners, and a person will not be compelled to sell his property against his will except in cases of imperious necessity. (*Williams* v. *Wells Fargo Bank & Union Tr. Co.*, 56 Cal.App.2d 645, 647 [133 P.2d 73].) The burden of proving the necessity for a sale is upon the person seeking a partition by sale. (*Ibid.*) As above stated, the court found that the value of the land is $1,500,000 exclusive of buildings and improvements thereon. It appears that an increment in value exists by reason of (1) the general utility of the buildings and improvements for commercial use and (2) the special utility of the buildings and improvements for motion picture use. The court did not make a finding as to the increment in value above the value of the land alone by reason of the existence of the buildings and improvements thereon, either for general commercial use or for motion picture use. Appellant asserts that the findings of the court as to great prejudice from partition in kind and as to the equitability of a sale cannot be supported on the basis of the value of the land alone. She also asserts that the matter of great prejudice to the owners is determined by comparing results of partition in kind and partition by sale; and that the test whether a partition in

kind can be made without great prejudice to the owners is "whether a sale will make the aggregate value of the land any greater than the value of the parcels into which it may be divided." The property is improved with approximately 64 buildings and structures of the kind used in a motion picture studio, and buildings representing about 90 per cent of the value of all the buildings are on the north half of the property which is outside the city of Los Angeles. The buildings consist of enclosed photographing and sound-recording stages, office buildings, dressing rooms, mechanical and technical shops, electrical powerhouse, scene and set storage sheds, film storage vaults, projection rooms, and film editing rooms. There are eight photographing and sound-recording stages which are large buildings. Two of the buildings have exterior foundation dimensions of approximately 225 feet by 255 feet and with an interior ceiling height of approximately 45 feet. Under the floors of some of them there are tanks which, when the floor is removed, are available for lake scenes. The sound-recording equipment is in the sound building which is the center of a recording system, and all recording is done in that building by transmission from microphones on the various stages. A powerhouse in which there are generators and transformers supplies electric power throughout the studio. Installations for electricity, water, gas, compressed air, telephones, sewers and storm drains are on the property. Water is obtained from the city and county and it is supplied through one system of pipes. There are 97 fire hose connections and 5 sewer connections on the property. Telephone service is furnished to all parts of the studio from a central switchboard. Most of the pipes, lines and wires required by the various installations are underground at depths ranging from a few inches to approximately 3 feet.

A real estate appraiser, called as a witness by plaintiffs, testified that the market value of the property is $3,000,000, and of that amount he attributed $1,440,000 to the land and $1,560,000 to the buildings; that, in said appraised value of the land, he included $150,000 as the value of the utilities installations. He also testified that stage 8 was of the value of approximately $300,000; that if the buildings were removed, the land as a single 17.4-acre site would be worth $1,143,000, that is, the value of the land would be reduced from $1,-440,000 to $1,143,000 or about 21 per cent; that a conversion of the premises for subdivision or industrial uses would require an expenditure of a substantial amount of money in re-

modeling and preparing to serve those uses; that the division of the property in kind, as suggested by appellant (shown by Exhibit D), would reduce the value of the land about 20 per cent. He also testified that if the property were divided into two parcels of approximately equal value, and each parcel was under separate ownership, the property would be damaged in the aggregate amount of approximately $1,500,000.

It thus appears that there was substantial evidence of the effect that the aggregate value of the separate parcels after a division in kind would be less than the value of the property as a whole. In *Muller* v. *Muller,* 14 Cal.App. 347 [112 P. 200], wherein a partition by sale was upheld, it was said, at page 348, that several witnesses testified, among other things, that if the lot were subdivided into two lots, the combined value of the two lots would not be as great as the value of the lot as a whole. In the present case, as above stated, the trial judge viewed the premises. The observations of the trial judge in viewing the premises are evidence in the case. (*Gates* v. *McKinnon,* 18 Cal.2d 179, 183 [114 P.2d 576].) From all the evidence in the case, which included maps, diagrams, pictures and his own observations from his inspection of the premises, the trial judge could give consideration to the kind, construction, arrangement, and uses of the buildings, structures and installations on the premises and to their locations thereon. Presumably his observations of the premises were of assistance in evaluating the adaptability of the buildings and improvements to various uses, and in determining whether a partition of the property in kind could be made without great prejudice to the owners. In *Priddel* v. *Shankie,* 69 Cal.App.2d 319 [159 P.2d 438], wherein it was asserted that the evidence did not support a judgment of partition by sale, it was held that the testimony therein as to the size of the property, the kind of improvements and their location on the property was sufficient evidence. It was said therein, at page 326, that the property is an "inside lot, 40 by 140 feet, improved by two dwelling houses and three garages so situated that the property could not be partitioned in kind without great prejudice to the parties." The question as to great prejudice is a factual question to be determined by the trial court (*Sting* v. *Beckham,* 94 Cal.App.2d 823, 825 [211 P.2d 586]), and where the evidence, even though conflicting, is such that the court might reasonably draw the conclusion therefrom that partition in kind would result in great prejudice to the owners, and the court ordered partition by sale, the deter-

mination will not be disturbed on appeal. (*Ibid.*) The evidence herein was sufficient to support the judgment.

Appellant argues that the court in ordering partition of the property was not restricted to ordering partition in kind or partition by sale, but that the court, sitting as a court of equity, had such broad power inherently that it could, as an alternative method, order that the property be sold for not less than the minimum value of the property, as found by the court, and if the property could not be sold for that amount then the property should be partitioned in kind. According to her argument, the court in the exercise of its broad equity power should adjust its decree in partition so that the decree will be sufficiently flexible to prevent greater prejudice to the owners from a partition by sale than would result from a partition in kind; and that if a sale cannot be made for an adequate price and thereby a partition by sale would result in greater prejudice than a partition in kind, the court can then adopt the method of partition which would result in less prejudice, that is, partition in kind. She asserts that the proposed alternative method, whereby the court would set a minimum sale price, would afford the owners some assurance that they would not suffer greater prejudice from a partition by sale than they would suffer if the partition were made in kind. In other words, it is appellant's view that if it is a fact that the property cannot be divided in kind without great prejudice to the owners, and if it also is a fact that the property cannot be partitioned by sale without greater prejudice, then a partition in kind is appropriate. It is not necessary to determine herein whether the court could have, or should have, entered such an alternative decree as that advocated by appellant. It is clear that the court was empowered under the provisions of said section 763 of the Code of Civil Procedure, above referred to, to order partition by sale if the property was so situated that partition in kind could not be made without great prejudice to the owners. Therefore, irrespective of whether the court had power in equity to render such an alternative form of decree as that advocated by appellant, the question is whether the court, in exercising an express statutory power to order partition by sale, abused its discretion. The question is not whether the court might have awarded some other form of relief, but it is whether the court abused its discretion in rendering a judgment it was empowered to render. There was no abuse of discretion.

Appellant argues that the trial judge was of the opin-

ion that such an alternative form of decree should be entered, but the judge concluded that, inasmuch as the court was not specifically empowered by the partition statutes to make such an alternative form of decree, it lacked such power. That argument is based upon statements of the trial judge which were in part as follows: (1) "The sections of the code dealing with partition by sale do not give to the court the broad powers that are granted it in the sections covering partitions in kind"; and (2) "As I have intimated before, what you said as to the manner of determining this [the proposed alternative decree] is the practicable solution, which it seems the legislature might have provided for . . . maybe it has; I don't know until I study these cases. . . ." Statements of the trial judge, given as reasons for his ruling or decision, do not prevail over the formal findings and judgment of the court. (See *Williams* v. *Kinsey*, 74 Cal.App.2d 583, 600, 601 [169 P.2d 487].) On appeal it is the result which is reached by the trial court that is reviewed, not the reasoning which the trial court assigns for its decision. If the findings, supported by the evidence, are sufficient to warrant the relief granted on any legal theory, the judgment should be affirmed. (See *Sears* v. *Rule*, 27 Cal.2d 131, 140, 141 [163 P.2d 443].)

Appellant also contends that the plaintiffs Formosa Corporation and Samuel Goldwyn Productions, Inc., are *alter egos* of Samuel Goldwyn, and that the recognition of them as entities separate from him would produce an inequitable result and promote injustice in that it would require a partition in kind to be made among three separate owners rather than between two owners. She also asserts that the trial court was of the opinion that a division of the property into three parts was an insurmountable obstacle to partition in kind. The court found that it is not true that Samuel Goldwyn is the *alter ego* of Goldwyn Productions, Inc., but it is true that Goldwyn Productions, Inc., is a separate entity from Samuel Goldwyn, in which entity five employees of Goldwyn Productions, Inc., own approximately 15 per cent of the nonvoting stock. No finding was made as to whether Samuel Goldwyn is the *alter ego* of Formosa Corporation, but the court found that Goldwyn was the sole stockholder of Formosa Corporation and that it was formed for the sole purpose of owning and controlling its undivided interest in the property. Appellant asserts that the finding that Samuel Goldwyn is not the *alter ego* of Goldwyn Productions, Inc., is not supported by the evidence. The court found that a partition of

the property in kind, whether the interests of Formosa Corporation and Goldwyn Productions, Inc., "be considered together or separately," cannot be made without great prejudice to the owners, and accordingly it is necessary that the property be sold. It appears therefore that the court found, in effect, that a partition in kind could not be made without great prejudice to the owners even if the division should be made in two parcels—one parcel representing the combined interests of Formosa Corporation and Goldwyn Productions, Inc., and the other parcel representing the interest of appellant. In view of that finding, the appellant was not prejudiced even if the findings on the subject of *alter ego* were erroneous.

Appellant contends further that a part of finding XV is erroneous in that it subjects to Goldwyn's ownership and right of removal property as to which no evidence was introduced. In finding XI and XII there is a general description of each class of property owned and removable by Goldwyn. It was there found that he owned (1) all the loose personal property; (2) all personal property and equipment forming a part of lessee's plant account on February 4, 1933, regardless of manner of affixation; (3) all personal property and equipment brought onto the property after February 4, 1933, except that affixed to an old building in such a way as to become an integral part thereof; (4) all new buildings and improvements. The items of new buildings which Goldwyn claims the right to remove were listed in Exhibit "A" attached to his answer to the amended and supplemental complaint; and the items of affixed equipage which he claims the right to remove were listed in Exhibit 29. The evidence with respect to such items was limited to those exhibits. In finding XIV the court found specifically as to new buildings and improvements listed on Exhibit "A" which were removable by Goldwyn. In finding XV the court found specifically (in a list covering about 8 pages of the clerk's transcript) as to the items of equipage listed on Exhibit 29 which were not removable by Goldwyn, and then the finding stated, "but he does have the right . . . to remove any of the remaining items appearing in said Exhibit 29, *as well as the right to remove any and all other equipage and/or new buildings and improvements not hereinabove specifically found to be nonremovable.*" It is the italicized part of the finding to which appellant objects. The burden was upon Goldwyn to establish what property was removable by him. Appellant argues

that the absence of evidence that Goldwyn claimed any other property than that specified in said Exhibits "A" and 29 defeats any right of removal by Goldwyn as to any other property than that so listed in said exhibits and specifically found to be removable by him. It is also to be noted that finding XXVII states that the Formosa Corporation, Goldwyn Productions, Inc., and appellant are the owners of all buildings, improvements and equipage "not hereinabove found to be owned by Goldwyn." This last mentioned finding is inconsistent with the said italicized portion of finding XV. There was no proof that Goldwyn claimed any property other than that specifically listed by him, and there was no proof that he was entitled to any property other than that specifically found by the court to be removable by him. The said italicized portion of finding XV should be stricken from finding XV.

Appellant makes a further contention to the effect that findings XI and XV are inconsistent because finding XI ignores a basis of differentiation stated in finding XV as to what is an integral part of the premises. She also contends that finding XV with respect to certain heating equipment is not supported by the evidence. She also contends that the court did not rule whether certain air-compressing equipment was an integral part of the premises except inferentially, and that such ruling was erroneous. The arguments in regard to these contentions are based in part upon statements made by the trial judge in his memorandum of opinion as to what he intended to find. These contentions are not sustainable.

It is ordered that the said part of finding XV, hereinabove set forth in italics, be stricken from said finding XV, which said part so stricken from the finding reads as follows: "as well as the right to remove any and all other equipage and/or new buildings and improvements not hereinabove specifically found to be nonremovable."

The portions of the judgment appealed from are affirmed.

Shinn, P. J., concurred.

Vallée, J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied January 14, 1952. Vallée, J., deeming himself disqualified, did not participate.

Appellant's petition for a hearing by the Supreme Court was denied February 21, 1952.