Filed 4/17/23  Jeter v. Callahan CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GWENDOLYN JETER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ANNIE CALLAHAN, as Trustee, etc., et al.,<br><br>    Defendants and Respondents. | D080518<br><br><br><br>(Super. Ct. No. PROPS0900100) |

APPEAL from an order of the Superior Court of San Bernardino County, Stanford E. Reichert, Judge.  Affirmed as modified.

Michelle D. Strickland, for Plaintiff and Appellant.

No appearances for Defendants and Respondents.

Gwendolyn Jeter appeals the probate court's order determining the identities and distributional shares of the beneficiaries of a trust originally set up by her grandmother.  She contends an amendment of the trust made after her grandmother died that changed the beneficiaries is void, and the court erroneously construed the amendment in identifying the beneficiaries

and their shares.  We modify the order to correct the identification and distributional share of each beneficiary and affirm the order as modified.

I.

BACKGROUND

A.    *The Trust*

Alberta Lewis had six children:  Annie, Lillie, Rosie, Artice, Bertha, and John.  Through a series of deeds recorded between 1985 and 1994, Alberta and Lillie took title as joint tenants to a multi-unit dwelling and an adjacent vacant lot in the City of Redlands (the Redlands property).  In 1996, Alberta set up a living trust in her name and put into the trust her interest in the Redlands property,[1] three parcels of real property in Texas, and various items of personal property.  She designated her six children as co-trustees and beneficiaries.  The trust instrument provided Alberta would receive all income and profits of the trust property during her lifetime, and upon her death "the co-trustees shall distribute the trust property outright to the beneficiaries," with the real property to be "divided equally among [the] beneficiaries" and the personal property to be divided as stated in the trust instrument.  Alberta died in 1999.

B.    *The Prior Litigation*

In 2008, John filed a civil action for partition and sale of the Redlands property.  By that time, Rosie and Bertha had died.  Lillie filed an answer in John's action and also filed in the probate court a petition regarding the internal affairs of a trust and a petition to establish another's claim of ownership to property.  John filed objections to Lillie's petitions.  The

---

[1]     This transfer severed the joint tenancy between Alberta and Lillie and made Lillie a tenant in common with the co-trustees of Alberta's trust.  (Civ. Code, § 683.2, subd. (a)(2); *Reiss v. Reiss* (1941) 45 Cal.App.2d 740, 746-747.)

2

partition action and probate proceedings were consolidated in the probate court. After multiple hearings and settlement conferences, a settlement was reached on December 10, 2009, and recited on the record. The probate court stated it would not dismiss the proceedings "until notice of proposed action goes through and settlement agreement is signed." No transcript reciting the terms of the settlement or settlement agreement is in the record. On February 8, 2010, Annie and Bertha's daughter each filed a consent. According to Gwendolyn, one of Rosie's sons was "present at one time or another during the proceedings but did not [want to] participate."

To implement the settlement, Lillie filed a petition to amend Alberta's trust on February 10, 2010. According to the petition, under the settlement John would be paid $45,000 for his interest in the Redlands property, and the portion of the property Alberta had put in trust would be put back in trust with Lillie, Artice, and Annie as co-trustees and beneficiaries until the last of them died, when the property would be liquidated and the proceeds distributed to Alberta's then-living grandchildren. Lillie prayed for an order amending Alberta's trust to include these changes and an order confirming her ownership of one-half of the Redlands property as a tenant in common with the co-trustees of the trust. Lillie agreed to pay the trust rent to occupy the property and one-half of the property expenses. Artice joined in Lillie's petition. Annie filed objections to Lillie's petition and her own petition for injunctive relief.

The probate court held multiple hearings on Lillie's petition to amend Alberta's trust and Annie's petition for injunctive relief, at some or all of which Lillie, John, Artice, one of Artice's daughters, Annie, two of Annie's daughters, and Bertha's daughter appeared. The court ultimately denied Annie's petition for injunctive relief, dismissed her objections to Lillie's

3

petition to amend the trust, and granted Lillie's petition. By order filed August 4, 2011 (the 2011 Order), the probate court ruled: (1) the interests of John and his heirs, beneficiaries, or assigns in the trust were terminated; (2) Lillie, Annie, and Artice were named co-trustees and beneficiaries; (3) Lillie's one-half ownership interest in the Redlands property was confirmed; (4) Lillie must pay reasonable rent for occupancy of the portion of the Redlands property held in trust and one-half of the property expenses; (5) upon the death of the last to die of Lillie, Artice, and Annie, the trust assets shall be liquidated and the proceeds distributed to Alberta's then-living grandchildren except the children of John, who were excluded from any distribution; (6) upon sale of the Redlands property, a $45,000 lien held by Artice and her husband must be paid in full before any distributions are made to beneficiaries, heirs, or successors in interest; (7) Lillie and Artice were entitled to reimbursement from the trust for the attorney fees incurred in prosecuting the petition to amend the trust; and (8) to sell the property, Lillie, Annie, and Artice would have to agree and file a petition to reform the trust.

C.    *The Current Litigation*

In 2019, after Artice and Lillie had died, Lillie's daughter Gwendolyn filed in the probate court a petition to terminate Alberta's trust. In the operative amended petition, Gwendolyn alleged her mother had died intestate and left her and her brother as heirs. She asked the probate court to terminate the trust, order the Redlands property sold, and distribute the proceeds of the sale of the trust portion of the property per stirpes in one-third portions to the children of Annie, Artice, and Lillie.[2] Annie filed an

---

2    Gwendolyn named as adverse parties Annie in her capacity as the remaining trustee of the amended trust; Annie's daughter as a trustee *de son*

4

objection to the petition. One of Artice's daughters appeared at a hearing and made an objection to the petition. The court instructed her to serve and file a written objection, but she did not.

The probate court set an issues conference. Gwendolyn filed a statement in which she raised, among other issues, whether the 2011 Order validly amended Alberta's trust after it became irrevocable upon her death and, if it did, who were the beneficiaries under that order. At the issues conference, the court ruled the 2011 Order was valid and would be enforced. The court set a briefing schedule on the issues of the identities of beneficiaries and their respective interests. In her brief, Annie contended all of Alberta's grandchildren except the children of John were contingent beneficiaries. In her brief, Gwendolyn contended: (1) only the children of Annie, Artice, and Lillie were entitled to inherit, and each set of children should receive a per stirpes share of one-third; or, alternatively, (2) all of Alberta's grandchildren except the children of John were entitled to inherit, and each set of grandchildren should receive a per stirpes share of one-fifth.

The probate court issued an amended tentative ruling on its interpretation of the 2011 Order. The court tentatively ruled the Redlands property must be sold when Annie, Artice, and Lillie have all died; and after the priority payments specified in the 2011 Order are made, the remaining proceeds of the sale of the trust portion of the property must be paid in equal shares to all of Alberta's then-living grandchildren except John's children. In response, Gwendolyn filed a brief objecting to distribution of proceeds to the

_tort_; Artice's daughter as a trustee _de son tort_; and the estates of Artice, Bertha, and Rosie. As additional relief against Annie, Annie's daughter, Artice's estate, and Artice's daughter, Gwendolyn sought an accounting, damages and imposition of a constructive trust for breach of fiduciary duty, and imposition of a surcharge for mismanagement of trust property. These additional claims are not at issue on this appeal.

grandchildren in equal shares rather than per stirpes shares, objecting to the postponement of the sale of the Redlands property until Annie dies as an unlawful restraint on alienation, and asking the court to allow her to sell the property. Artice's daughter filed a brief agreeing with the amended tentative ruling.

The probate court held a hearing on October 4, 2021, at which Gwendolyn, Annie, Artice's daughter, and Rosie's three children appeared through their attorneys. Annie had no opinion on the court's amended tentative ruling, and Artice's daughter and Rosie's children agreed with it. Gwendolyn disagreed, again objecting to equal distributions to Alberta's grandchildren and insisting on per stirpes distributions. After hearing argument, the court stated it would issue a written decision and did so on October 12, 2021 (the 2021 Order). The court determined: (1) the 2011 Order was "clear on its face" and "the basis for res judicata and collateral estoppel"; (2) under the 2011 Order, the Redlands property "<u>must</u> be sold <u>when</u> Annie, Artice, and Lillie have ALL DIED"; (3) when the property is sold, after the priority payments specified in the 2011 Order are made, "the remaining trust proceeds go to all Alberta's then living grandchildren except to the descendants of [John]"; (4) there are 18 grandchildren who are beneficiaries, whom the court listed by name; and (5) the grandchildren are to "receive their distributions (inheritance) in kind, that is, 18 equal shares."

Gwendolyn appealed the 2021 Order.[3]

---

[3]     The 2021 Order, which interprets amendments made to Alberta's trust by the 2011 Order, is appealable as a final order "[d]etermining questions of construction of a trust instrument" (Prob. Code, § 17200, subd. (b)(1); see *id.*, § 1304, subd. (a) [final order under § 17200 is appealable]), even though it did not entirely dispose of Gwendolyn's amended petition (*Gridley v. Gridley*

6

II.

DISCUSSION

Gwendolyn contends the 2011 Order on which the probate court based its rulings in the 2021 Order is void because it violated the due process rights of Alberta's grandchildren. Gwendolyn also contends the 2011 Order has no preclusive effect. She contends the 2021 Order unreasonably restrains her right to partition and sell the Redlands property. Gwendolyn also contends the 2021 Order erroneously directs the proceeds of the eventual sale of the trust portion of the property be paid per capita rather than per stirpes to Alberta's then-living grandchildren except those fathered by John. She asks us to void the 2011 and 2021 Orders, to fashion a remedy for the buyout of John's interest in the Redlands property, and to order the property sold and the proceeds distributed according to the original trust instrument.

A.  *Validity of the 2011 Order*

We first consider Gwendolyn's attack on the 2011 Order.[4] Gwendolyn claims the order violated the due process rights of Alberta's 18 grandchildren

---

(2008) 166 Cal.App.4th 1562, 1586 [order deciding issue that could be subject of separate appealable probate order is appealable]).

[4]     In her opening brief, Gwendolyn identifies the 2011 Order as one of the orders she is appealing. That order was appealable as a final order "[a]pproving or directing the modification . . . of [Alberta's] trust." (Prob. Code, § 17200, subd. (b)(13); see *id.*, § 1304, subd. (a) [final order under § 17200 is appealable]; *Boys & Girls Club of Petaluma v. Walsh* (2008) 169 Cal.App.4th 1049, 1057 [order modifying trust is appealable].) But no appeal was taken, and the time to appeal expired more than a decade ago (Cal. Rules of Court, rule 8.104(a), (e) [appeal must be taken no later than 180 days after entry of appealable order]). It is thus too late for Gwendolyn to attack the 2011 Order directly by appeal. She may collaterally attack the order in the current litigation, however, on the ground the order is void because it violated her due process rights and its enforcement would injure her property rights. (See *Paterra v. Hansen* (2021) 64 Cal.App.5th 507, 527-

(whom Gwendolyn calls "contingent beneficiaries" of Alberta's trust) because they were not given notice and opportunity to be heard before their property rights were affected. (See U.S. Const., 14th Amend., § 1 ["nor shall any State deprive any person of life, liberty, or property, without due process of law"]; Cal. Const., art. I, § 7, subd. (a) ["person may not be deprived of life, liberty, or property without due process of law"]; *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 313 (*Mullane*) [proceeding that may deprive trust beneficiaries of property must "be preceded by notice and opportunity for hearing appropriate to the nature of the case"]; *Estate of Reed* (1968) 259 Cal.App.2d 14, 21 ["when the rights of beneficiaries to a trust are inevitably affected, they are entitled to notice"].) We reject this claim.

Gwendolyn has not adequately preserved the due process claim for appeal. She asserted in a reply brief she filed in the probate court that the grandchildren were not noticed and served, but nowhere in that brief or in any other she filed in the probate court did she set out a factually and legally supported due process argument based on lack of notice and opportunity to be heard. Although Gwendolyn states in her opening brief that she "attempted" to address the due process issues in her issues conference statement, the portion of the statement she cites questions the probate court's jurisdiction to amend the trust after Alberta's death but does not mention due process, notice, or opportunity to be heard. Nor did Gwendolyn press those issues at either of the hearings in the probate court before it issued the 2021 Order. She may not raise for the first time in this court issues she did not

_____

528 [stranger to action that led to void order may collaterally attack order if enforcement would injure her]; *Sindler v. Brennan* (2003) 105 Cal.App.4th 1350, 1353 [void order may be collaterally attacked at any time]; *Brown v. Williams* (2000) 78 Cal.App.4th 182, 186, fn. 4 [order entered in violation of due process rights to notice and opportunity to be heard is void].)

adequately raise in the probate court; such issues are forfeited. (*Foxcroft Productions, Inc. v. Universal City Studios LLC* (2022) 76 Cal.App.5th 1119, 1133; *In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 510.)

Gwendolyn also has not supplied us with a record sufficient to establish the alleged due process violations. In the 2011 Order, the probate court found that "all Notices of said Hearing have been given in a manner and form according to law or that all Notices can be waived and dispensed with." That finding is presumed correct and Gwendolyn, as the appellant, has the burden affirmatively to establish by an adequate record that the finding is erroneous. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Trenk v. Soheili* (2020) 58 Cal.App.5th 1033, 1046.) The register of actions included in the record on appeal contains several entries for proofs of service of summons and orders for service by publication in the consolidated proceedings that led to the 2011 Order. Gwendolyn, however, has not included in the record any of those documents or any others that might show who was given notice. Her failure to provide a proper record on this issue requires us to resolve it against her. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296.)

Even if Gwendolyn had not procedurally defaulted on the due process claim, it would fail because she has no standing to assert it. A party generally may assert only her own legal rights and not those of others. (*In re Q.R.* (2020) 44 Cal.App.5th 696, 702-703; *Brenner v. Universal Health Services of Rancho Springs, Inc.* (2017) 12 Cal.App.5th 589, 605; *Quail Lakes Owners Assn. v. Kozina* (2012) 204 Cal.App.4th 1132, 1137.) The due process right to notice and opportunity to be heard at issue here belonged to those persons who, at the time of the consolidated proceedings resolved by the 2011

Order, had interests in the portion of the Redlands property that had been the subject of Alberta's trust. (See *Roth v. Jelley* (2020) 45 Cal.App.5th 655, 670 (*Roth*) ["If a proceeding will 'adversely affect' a person's property interest, due process requires that the person be given notice . . . and an opportunity to be heard"].) Gwendolyn was not such a person.

When Alberta put her portion of the Redlands property in trust, she reserved the right to income from the property for life, designated her six children as co-trustees and beneficiaries, and provided that upon her death the property would be distributed "outright" and "divided equally" among the children. Alberta's death terminated the trust (Prob. Code, § 15407, subd. (a)(1), (2); *Salvation Army v. Price* (1995) 36 Cal.App.4th 1619, 1624), and made her six children, who were then all still alive, tenants in common in the property (Civ. Code, § 686; *Wilson v. S.L. Rey, Inc.* (1993) 17 Cal.App.4th 234, 242). The trust instrument made no mention of Alberta's grandchildren. Under her trust, they held no interest in the Redlands property, either present or future, vested or contingent. The grandchildren had at most an expectation they would one day succeed to their parents' rights in the property. "A mere possibility, such as the expectancy of an heir apparent, is not to be deemed an interest of any kind." (Civ. Code, § 700.)

Gwendolyn did not acquire any interest in the Redlands property until the 2011 Order amended Alberta's trust. The 2011 Order put the portion of the property previously held in trust back in trust, and provided that on the death of the last to die of Lillie, Artice, and Annie, the property "shall be liquidated and the proceeds distributed to the then living grandchildren of [Alberta] except for the heirs and beneficiaries of her son [John]." The provision created a future interest (specifically, a contingent remainder) in the specified grandchildren that is conditioned on their surviving the three

10

named aunts.  (See Civ. Code, §§ 690 [defining "future interest"], 769 [defining "remainder"], 778 [defining "remainder upon a contingency"]; *Estate of Washburn* (1909) 11 Cal.App. 735, 742 [trust provision that children of lifetime beneficiary living at time of her death would take trust property created contingent remainder in children].)  " '[A] contingent remainder is an estate and not a mere expectancy.' "  (*Roth*, *supra*, 45 Cal.App.5th at p. 669.)  Since the 2011 Order *conferred* an interest in the Redlands property on Gwendolyn for the first time and did *not deprive* her of a pre-existing interest in the property, the proceedings that led to the order did not implicate her due process rights.  (U.S. Const., 14th Amend., § 1; Cal. Const., art. I, § 7, subd. (a); *Mullane*, *supra*, 339 U.S. at p. 313; cf. *Roth*, at pp. 669, 672 [grandson who had contingent remainder under grandfather's trust was entitled to notice and opportunity to be heard in proceeding that eliminated that interest].)[5]

B.    *Interpretation of the 2011 Order*

We next consider Gwendolyn's attack on the probate court's construction of the 2011 Order in its 2021 Order.  Gwendolyn complains the court's ruling the trust portion of the Redlands property must be sold when Annie dies improperly restrains her statutory right, as an owner of the

---

[5]    The only grandchildren of Alberta who apparently were owners of interests in the Redlands property at the time of the proceedings, and therefore would have been entitled to notice and opportunity to be heard, were those descended through Bertha or Rosie, the only children of Alberta who had died by then.  Upon their deaths, the interests of Bertha and Rosie in the property passed to their respective devisees or heirs.  (Prob. Code, § 7000; *Olson v. Toy* (1996) 46 Cal.App.4th 818, 825.)  Bertha's only child appeared and filed a consent to the settlement that led to the 2011 Order. Rosie's children were given notice, but only one appeared and chose not to participate.  It thus appears the grandchildren entitled to notice and opportunity to be heard received them.

undivided one-half interest of the property not held in trust, to partition and sell the entire property now. Gwendolyn further complains the court frustrated Alberta's intent by directing the proceeds of the eventual sale of the property be paid in equal shares to each of Alberta's then-living grandchildren, except the children of John, rather than in one-fifth shares to each set of such grandchildren. Neither complaint has merit.

Gwendolyn has no right to partition the Redlands property before Annie dies because Lillie had no such right. When Lillie died intestate, Gwendolyn and her brother inherited the one-half interest in the property Lillie owned as a tenant in common with the co-trustees of the trust. (Prob. Code, §§ 6400, 6402, subd. (a).) "They hold the property inherited from [Lillie] precisely as [she] held it, subject to the same conditions and equities that attached to it in [her] hands." (*Carlson v. Carlson* (1932) 124 Cal.App. 207, 210; see *Argonaut Ins. Co. v. Superior Court* (1985) 164 Cal.App.3d 320, 324 (*Argonaut Ins. Co.*) ["The heir . . . 'stands in the shoes' of the decedent."].) As a tenant in common, Lillie would have had an absolute right to partition the Redlands property (Code Civ. Proc., § 872.210, subd. (a)(2); *Formosa Corp. v. Rogers* (1951) 108 Cal.App.2d 397, 409), "unless barred by a valid waiver" (Code Civ. Proc., § 872.710, subd. (b)). Tenants in common impliedly waive the right to partition when they acquire property for a specific use for a definite period and partition would defeat the purpose. (*American Medical International, Inc. v. Feller* (1976) 59 Cal.App.3d 1008, 1015-1017; *Pine v. Tiedt* (1965) 232 Cal.App.2d 733, 737-740.) There was such a waiver here.

In the consolidated proceedings resolved by the 2011 Order, Lillie prevented the partition and sale of the Redlands property John had sought and impliedly waived her own right to partition by agreeing with the other tenants in common: (1) to buy out John's interest; (2) to put the portion of

12

the property that had been in trust back in trust for the lifetime benefit of Annie, Artice, and Lillie; (3) to sell the property and distribute the proceeds to the grandchildren of Alberta (except John's children) who were then living at the time of the death of the last lifetime beneficiary to die; and (4) not to sell the property earlier unless Annie, Artice, and Lillie agreed. Gwendolyn, who stands in Lillie's shoes (*Argonaut Ins. Co.*, *supra*, 164 Cal.App.3d at p. 324), may not partition and sell the Redlands property before Annie dies, because to allow her to do so would frustrate the plan of Lillie and her co-owners to keep a portion of the property in trust for Annie's lifetime benefit and not sell it until she dies. (See *Rowland v. Clark* (1949) 91 Cal.App.2d 880, 882 [co-owners' agreement that one would have life estate in property defeated other's right to partition before death of one with life estate].) The probate court thus did not err by ruling the property "<u>must</u> be sold <u>when</u> Annie, Artice, and Lillie have ALL DIED."

The probate court also did not err by ruling the grandchildren of Alberta who are alive when Annie dies, except any of John's children who may then be alive, will be entitled to an equal share of the proceeds of the sale of the portion of Redlands property that was put back in trust in 2011. As amended by the 2011 Order, the trust instrument provides that upon the death of the last to die of Annie, Artice, and Lillie, "all Trust assets shall be liquidated and the proceeds distributed to the then living grandchildren of [Alberta] except for the heirs and beneficiaries of [John]." This provision does not specify whether the distribution is to be per capita (i.e., in equal shares to each eligible grandchild), as the probate court ruled, or per stirpes (i.e., in one-fifth shares to each set of eligible grandchildren for equal division of the share among them), as Gwendolyn urges. (See *Estate of Edwards* (1988) 203 Cal.App.3d 1366, 1372 [defining "per capita" and "per stirpes"

13

distributions].)  Where, as here, a trust instrument "provides for issue or descendants to take without specifying the manner, the property to be distributed shall be distributed in the manner provided in Section 240." (Prob. Code, § 245, subd. (a).)  As pertinent to this case, under that section "the property shall be divided into as many equal shares as there are living members of the nearest generation of issue then living." (*Id.*, § 240.)  Hence, each grandchild of Alberta alive when Annie dies, except the then-living children of John, will be entitled to an equal share of the proceeds of the sale of the trust portion of the Redlands property.

The probate court, however, prematurely determined there would be 18 shares because there were that many grandchildren of Alberta (excluding John's children) alive when the court issued the 2021 Order.  "When a gift to a class is to vest in the members of such class at some future time, during the period of postponement the class possesses the ability to increase and decrease. . . .  The gift to the class must therefore be distributed among those who qualify *at the time specified*." (*Estate of Haney* (1959) 174 Cal.App.2d 1, 13, italics added.)  Because the remainder interest in Alberta's grandchildren is contingent on their surviving Lillie, Artice, and Annie, the number of grandchildren who will be entitled to a share of the proceeds of the sale of the trust portion of the Redlands property will not be known until Annie, Artice, and Lillie have all died.  Although Artice and Lillie were dead when the court issued the 2021 Order, Annie was not.  The court therefore erred by determining the number of shares to be 18, and we shall modify the 2021 Order to correct the error.

C.    *Other Issues*

Gwendolyn contends the probate court erroneously ruled the 2011 Order had res judicata and collateral estoppel effect in the current litigation.

14

The only specific portion of the 2011 Order to which the court gave preclusive effect was the "find[ing] that all Notices of said Hearing have been given in a manner and form according to law or that all Notices can be waived and dispensed with," which in the court's view rendered the 2011 Order valid and enforceable. Although that finding may be relevant to the due process claim Gwendolyn raises, we have already determined she procedurally defaulted on that claim and has no standing to assert it. (See pt. II.A., *ante*.) We thus need not and do not decide whether the 2011 Order bars the claim under preclusion principles.

We also need not consider Gwendolyn's request that in the event we void the 2011 Order, we fashion "some alternate remedy . . . to deal with the buyout" of John's interest in the Redlands property. We are not voiding the 2011 Order. The buyout stands.

## III.

## DISPOSITION

The 2021 Order is modified by striking the sentence on lines 25 and 26 of page 10 that states, "The court concludes that the grandchildren receive their distributions (inheritance) in kind, that is, 18 equal shares," and replacing it with, "Each grandchild of Alberta who is alive when Lillie, Artice, and Annie have all died, except the then-living children of John, shall receive an equal share." As so modified, the order is affirmed.


IRION, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DO, J.

16