[No. A120285. First Dist., Div. Five. Dec. 31, 2008.]

BOYS AND GIRLS CLUB OF PETALUMA et al., Plaintiffs and Respondents, v.
JAMES J. WALSH, as Cotrustee, etc., et al., Defendants and Appellants.

## COUNSEL

Wigdahl & Passarino, Gary J. Passarino; Cooper, White & Cooper and Richard J. Collier for Defendants and Appellants.

Edmund G. Brown, Jr., Attorney General, and Kelvin C. Gong, Deputy Attorney General; Spaulding McCullough & Tansil and Gregory G. Spaulding for Plaintiffs and Respondents.

## OPINION

**JONES, P. J.**—Subject to one exception, Probate Code section 15403, subdivision (a)[1] gives the probate court the authority to modify or terminate an irrevocable trust "if all beneficiaries . . . consent." The exception to this general rule is found in subdivision (b), which provides that even if all beneficiaries consent, a court cannot modify or terminate a trust where "the continuance of the trust is necessary to carry out a material purpose of the trust" unless "the court, in its discretion, determines that the reason for doing so under the circumstances outweighs the interest in accomplishing a material purpose of the trust." (§ 15403, subd. (b).)

In this appeal we must interpret and apply section 15403 to a charitable trust (the Trust) created by Laurence Moore (Moore) in 1993. In the Trust, Moore designated five beneficiaries: The Salvation Army, Guide Dogs for the Blind, Hospice of Petaluma, Boys and Girls Club of Petaluma, and Face to Face of Sonoma County. Among other powers, the Trust gave the trustees

---

[1] Unless otherwise noted, all further statutory references are to the Probate Code.

broad discretion in two areas: (1) the "discretion to determine the relative amounts or percentages" given to these beneficiaries of the Trust, "including the power to . . . make [a] distribution to one or more of them to the exclusion of others"; and (2) the discretion to name additional beneficiaries and distribute the Trust to them.

Before his death in 2003, Moore named James J. Walsh and Michael E. Wood as successor trustees. After Moore's death, a contentious dispute arose regarding the successor trustees' discretion to identify beneficiaries of the Trust. Over the trustees' objection, the probate court modified the Trust in 2007 pursuant to section 15403. In ordering the modification without first deciding the trustees' petition to ascertain beneficiaries, the probate court gave effect to a settlement agreement reached by the beneficiaries listed in the Trust and a group of other charitable organizations referenced in a handwritten document Moore prepared after the execution of his Trust, and dated four days after his last amendment.

The successor trustees appealed.

There are two questions before us. The first question is whether "all beneficiaries" of the Trust consented to the modification in accordance with section 15403, subdivision (a). The answer to this question is yes. The second question before us is whether the broad discretion conferred upon the trustees constitutes a "material purpose" that would prevent a probate court from modifying the Trust pursuant to section 15403, subdivision (b). The answer to this question is no.

Accordingly, we affirm the probate court's order modifying the Trust.

## FACTUAL AND PROCEDURAL BACKGROUND

*Moore Creates the Trust*

Moore created the Trust on March 8, 1993. The Trust was to "be organized and operated exclusively for charitable purposes" and its property was "irrevocably dedicated to charitable purposes." Article V of the Trust provided as follows:

"A. Charitable Beneficiaries. The [T]rust shall terminate upon the later of the Grantor's death or ten (10) years from the date this [T]rust is executed.

Upon termination [of the Trust], the Trustees shall distribute the entire remaining balance of the [T]rust in such proportions as the Trustees determine in their discretion to the following charitable organizations:

"1. THE SALVATION ARMY (Northern California Division).

"2. GUIDE DOGS FOR THE BLIND.

"3. HOSPICE OF PETALUMA.

"4. BOYS AND GIRLS CLUB OF PETALUMA.

"5. FACE TO FACE OF SONOMA COUNTY.

"6. Such other charitable organization or organizations similar to one or more of the above-named charities, as the Trustees determine in their discretion, provided that such other charities are organized and operated exclusively for charitable purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code and are qualified to receive contributions deductible under Section 170(c)(2) and Section 2055 of the Internal Revenue Code or successor provisions.

"B. <u>Distributions</u>. The Trustees are authorized to make the distributions under this Article over a reasonable period of time as determined in the Trustees' discretion, provided that during such distribution period the remaining trust estate shall continue to be managed as provided herein. The Trustees shall have the discretion to determine the relative amounts or percentages to be given to the respective charitable organizations, including the power to distribute more to some of the charities than others, or to make distribution to one or more of them to the exclusion of others."

Moore retained the power to amend the Trust "in whole or in part, by a writing delivered to the Trustee." Moore amended the Trust twice, both times to change the trustees. In a document dated September 8, 1995, and entitled, "Amendment," Moore amended the Trust to name Walsh and Wood (appellants) as successor trustees.[2]

---

[2] The relevant amendment states that Moore "revokes . . . and amends Paragraph A of Article VI" to appoint appellants as cotrustees. Paragraph A of article VII is titled "Appointment of Trustee," while article VI speaks to a different subject, "Trustee Powers."

*The Discovery of the Disbursement Schedule*

Moore died in April 2003. Shortly thereafter, Moore's niece, Marsha J. Moore (Marsha), claimed an interest in Trust assets. During the litigation with Marsha, appellants found several documents in Moore's files, including a handwritten letter from Moore to his then attorney, Robert J. Kwasneski. The letter, dated September 10, 1995, stated, "Enclosed is [a] copy of the disbursement schedule we discussed. There will be changes, of course, as time passes, but I will rest easier with this in place." The letter attached a document entitled, "Schedule For Cash Disbursements to be made Annually as Provided For in the . . . Trust Following the Death of Its Grantor" (Disbursement Schedule). The Disbursement Schedule listed 18 organizations[3] and designated the distributions that each organization would receive annually.

In January 2004, appellants filed a petition for construction of trust documents (petition for construction) seeking construction of the Trust "in light of" the Disbursement Schedule. Appellants acknowledged that they were "unable to locate any evidence that [Moore] did not intend the provisions of [the Disbursement Schedule] to guide [their] discretion." They also noted that the Disbursement Schedule "provide[d] for annual ongoing distributions of the Trust income. [A]nd name[d] charitable beneficiaries in addition to those identified in the [T]rust." Appellants argued that the Disbursement Schedule "appear[ed] to create an ambiguity" in the Trust because it contemplated "an indefinite term. [A]nd . . . contemplates charitable beneficiaries different from those" listed in the Trust.

*Appellants File a Petition to Ascertain Beneficiaries and the Battle Begins*

Appellants eventually settled the litigation with Marsha in February 2006 and the Trust received approximately $4.6 million. Shortly thereafter, appellants began to focus on ascertaining beneficiaries and distributing the Trust. In

---

[3] The organizations listed in the Disbursement Schedule are (1) Sonoma State University; (2) Hillsdale College; (3) Walla Walla College; (4) Auburn Adventist Academy; (5) Pine Hills Junior Academy; (6) KQED/Ch. 9-Signal Society; (7) Petaluma Boys and Girls Club; (8) Habitat for Humanity; (9) United States Naval Academy Alumni Association; (10) University of California Berkeley Alumni Association; (11) University of Texas M.D. Anderson Cancer Center; (12) Canine Companions for Independence; (13) Guide Dogs for the Blind; (14) Council on Aging; (15) Hospice of Petaluma; (16) Petaluma Kitchen; (17) St. Anthony Foundation; and (18) Humane Society of Sonoma County. Guide Dogs for the Blind, Hospice of Petaluma, and Boys and Girls Club of Petaluma are named in the Trust and in the Disbursement Schedule. The Salvation Army and Face to Face of Sonoma County are named in the Trust but are not listed in the Disbursement Schedule. Together, the Trust and the Disbursement Schedule list 20 charitable organizations. These organizations are respondents in this appeal.

April 2006, they dismissed their petition for construction[4] and filed a petition to ascertain beneficiaries. Appellants stated that they "wish[ed] to be clear" whether the Disbursement Schedule amended the Trust; they explained that they sought "guidance to determine the beneficiaries of the Trust."

But the five beneficiaries listed in the Trust—The Salvation Army, Guide Dogs for the Blind, Hospice of Petaluma, Boys and Girls Club of Petaluma, and Face to Face of Sonoma County—had a different idea. They contended that the Disbursement Schedule did *not* amend the Trust and, as a result, the court should compel appellants to distribute the Trust in "equal shares" to each of them. In November 2006, they filed a petition to compel appellants to distribute the Trust to them and only them (distribution petition). Appellants opposed the distribution petition. They characterized it as "premature" and argued that the legal effect of the Disbursement Schedule must be determined before distributing the Trust. Appellants explained that by ruling on the petition to ascertain beneficiaries, "the Court will answer a basic question crucial to the administration of the [T]rust: 'Who are the beneficiaries of the Trust?' Until that question is answered, the Trustees cannot move forward with distribution, although they are eager to do so." Appellants also argued that granting the distribution petition would preclude them from exercising their discretion to determine Trust beneficiaries and the amounts those beneficiaries would receive. In addition, several respondents opposed the distribution petition, claiming that the Disbursement Schedule amended the Trust to name additional beneficiaries.

In the spring of 2007, appellants and respondents participated in two mediations; both were unsuccessful. The court set a trial date to resolve the petition to ascertain beneficiaries and the distribution petition and ordered the parties to attend a mandatory settlement conference. At the settlement conference, respondents negotiated a settlement among themselves. The settlement agreement defined all respondents as "Beneficiaries" of the Trust and set forth a "percentage beneficial interests" that each beneficiary would receive annually. The settlement agreement also provided that "[t]he Trust shall be modified to reflect the terms of this Settlement Agreement." Appellants did not approve of, nor agree to, the settlement.

*The Court Modifies the Trust*

In September 2007, respondents filed a petition to modify the Trust (petition to modify). They contended that the court had the authority to

---

[4] Appellants apparently believed that the issues raised in the petition for construction, "the identities of the beneficiaries and the duration of the [T]rust," could "be resolved outside the courtroom."

modify the Trust pursuant to section 15403, subdivision (a), because "all twenty beneficiaries of the Trust agree to the proposed modifications." The California Attorney General (Attorney General) filed a statement of "No Position."

Appellants opposed the petition to modify. They urged the probate court to deny the petition to modify because " 'all the beneficiaries' of the Trust have not consented—indeed, they have not yet even been identified. . . ." In addition, appellants argued that the proposed modification (1) precluded any charitable organization other than respondents from being considered a beneficiary of the Trust; and (2) prevented appellants "from carrying out the clearly stated purpose and intent of the Trust."

Following a hearing, the probate court granted the petition to modify. The court's November 15, 2007 order stated, "This matter has been before the Court since May 5, 2003. Section 15403(a) of the Probate Code provides that, unless the continuance of the trust is necessary to carry out a material purpose of the trust, 'if all beneficiaries of an irrevocable trust consent, they may compel modification or termination of the trust upon petition to the court.' Having carefully considered the petition and the trustee's opposition, the Court finds that all beneficiaries have agreed to the proposed modifications and that there is no material purpose of the [T]rust which would necessitate its continuance beyond the distributions to those beneficiaries. [¶] Therefore, the Court hereby approves the modifications [to] the [T]rust embodied in the beneficiaries' settlement agreement. The parties are ordered to confer and agree upon a comprehensive form of order which approves the modifications and which addresses any other . . . matters in this case."

On December 3, 2007, the court entered an order modifying the Trust and dismissing the petition to ascertain beneficiaries and the distribution petition. Appellants timely appealed. In April 2008—and after appellants appealed— the Attorney General filed a "Consent to Modification of Trust" with the probate court. In it, the Attorney General stated that it "represents the People of the State of California, the ultimate beneficiaries of charity" and that on behalf of the "ultimate beneficiaries of charity, [it] does hereby CONSENT" to the modification of the trust "consistent with the Court's December 3, 2007 Order." We have taken judicial notice of the Attorney General's "Consent to Modification of Trust." The Attorney General has also filed a letter brief in this Court "in support of upholding the trial court's modification of the . . . Trust."

## DISCUSSION

Appellants contend the probate court erred in modifying the Trust for two reasons. First, they argue section 15403, subdivision (a), precluded the court from modifying the Trust because all beneficiaries have not been identified and, as a result, could not have consented to the modification. Second, appellants contend that the order modifying the Trust contravenes section 15403, subdivision (b), because the reason for the modification does not outweigh the material purpose of the Trust, specifically their discretion to identify beneficiaries and to distribute the Trust to those beneficiaries.

### I. *Standard of Review*

"An appeal lies from any order made appealable by the Probate Code." (*Esslinger v. Cummins* (2006) 144 Cal.App.4th 517, 522 [50 Cal.Rptr.3d 538] (*Cummins*); see Code Civ. Proc., § 904.1, subd. (a)(10).) With two exceptions not relevant here, "the Probate Code permits an appeal to be taken from any final order under Probate Code section 17200 et seq. . . ." (*Cummins, supra,* at p. 522.) An order "[a]pproving or directing the modification or termination of the [T]rust" constitutes a final order under section 17200. (§ 17200, subd. (b)(13).) The order modifying the Trust is therefore appealable.

The parties disagree on the appropriate standard to review the probate court's application of section 15403, subdivision (a).[5] Appellants contend this case presents "a mixed issue of law and fact" and urge us to apply an " 'independent review' standard." Respondents, however, contend that the probate court's ruling with respect to section 15403, subdivision (a), should be reviewed for abuse of discretion pursuant to sections 17200, subdivision (b)(13), and 17206.

The issue of whether all beneficiaries consented to the modification within the meaning of section 15403, subdivision (a), is a question of statutory interpretation and is a pure question of law. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; see also *Patton v. Sherwood* (2007) 152 Cal.App.4th 339, 345 [61 Cal.Rptr.3d 289] (*Sherwood*) [interpretation of § 24 "presents a question of law"].) The first step in statutory construction " ' "is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. . . ." . . .' " (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985,

---

[5] The parties agree that the court's application of section 15403, subdivision (b), is reviewed for abuse of discretion.

990 [73 Cal.Rptr.2d 682, 953 P.2d 858], citations omitted; see also *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147 [74 Cal.Rptr.3d 81, 179 P.3d 882].) "If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' " (*People v. Toney* (2004) 32 Cal.4th 228, 232 [8 Cal.Rptr.3d 577, 82 P.3d 778], quoting *People v. Robles* (2000) 23 Cal.4th 1106, 1111 [99 Cal.Rptr.2d 120, 5 P.3d 176].)

## II. *The Order Modifying the Trust Complied with Section 15403, Subdivision (a)*

We must first ascertain the meaning of the phrase "all beneficiaries . . . of the trust" set forth in section 15403, subdivision (a). Section 24 defines a beneficiary as "a person to whom a donative transfer of property is made or that person's successor in interest . . . ," including "a person who has any present or future interest, vested or contingent." (§ 24, subd. (c).) In the context of a charitable trust, section 24 defines a beneficiary as "any person entitled to enforce the trust." (§ 24, subd. (d).) Applying section 24, we conclude the five beneficiaries named in the Trust instrument—The Salvation Army, Guide Dogs for the Blind, Hospice of Petaluma, Boys and Girls Club of Petaluma, and Face to Face of Sonoma County—are beneficiaries that have a "present or future interest, vested or contingent" in the Trust. (§ 24, subd. (c).) Even if they hold mere "future interests" or "contingent interests," the five named beneficiaries are entitled to enforce the Trust pursuant to the plain language of section 24, subdivision (d). These five entities do not lack the status of beneficiaries merely because appellants have not exercised their powers as successor trustees to select the five, or other charitable organizations.

Appellants contend that respondents could not consent to the modification because they "had no vested claim to assets of the Trust, and, in fact, no claim to be beneficiaries at all." To support this argument, appellants rely on *Estate of Quinn* (1958) 156 Cal.App.2d 684, 687–688 [320 P.2d 219]. In that case, a will directed the residue of the decedent's estate to " 'go to charity' " but did not identify a specific charitable purpose or appoint a trustee to select the charity or charities. (*Id.* at p. 685.) The trial court designated three charities. The charities and the decedent's heirs later agreed to receive equal shares of the residue, despite the fact that the will directed the residue to " 'go to charity.' " (*Ibid.*) The Attorney General appealed, contending that "the entire residue" of the estate "should have been awarded to charity" and that no portion of the estate should have gone to the heirs. (*Ibid.*)

The appellate court agreed. It held that "[n]either the failure to appoint a trustee . . . nor the failure to designate a specific charitable purpose . . . prevents a court from effectuating the will of the testator." (*Estate of Quinn, supra,* 156 Cal.App.2d at p. 687, citations omitted.) The court also rejected the heirs' claim that the charities consented to the settlement and relinquished their share of the estate residue. (*Id.* at p. 688.) The court explained that the " 'consent' of the designated charities" did not sanction diverting "any portion of the residue to a noncharitable purpose" because the interest of the charities had not "vested. . . . The court could have eliminated the charities mentioned and substituted other charities at any time prior to the filing of the decree of distribution." (*Id.* at pp. 689–690.)

*Estate of Quinn* has no application here for several reasons. First, *Estate of Quinn* stands for the proposition that a charitable bequest is valid even where it does not specify the charity or the charitable purpose. (See, e.g., *Estate of Clementi* (2008) 166 Cal.App.4th 375, 385 [82 Cal.Rptr.3d 685]; *Estate of Gatlin* (1971) 16 Cal.App.3d 644, 648 [94 Cal.Rptr. 295].) The issue in *Estate of Quinn* was whether the failure to appoint a trustee and designate a charitable purpose prevented the court from giving effect to the testator's will, not whether charities may consent to a proposed distribution. In fact, appellants concede that "*Estate of Quinn* can be distinguished on the grounds that the central issue [in that case] was whether all the assets should have gone to charities rather than being shared with an heir, an issue not raised in the present case." Second, *Estate of Quinn* was decided almost 30 years before section 15403 was enacted.[6] As a result, it has no bearing on whether the probate court properly applied section 15403 here.[7]

Appellants urge an additional ground to reverse the ruling granting the petition to modify. They contend that section 21102, subdivision (a), "compelled" the probate court "to hear and decide" their petition to ascertain

---

[6] Former section 15403 was added by the Legislature in 1986. (Stats. 1986, ch. 820, § 40, pp. 2750, 2756; repealed by Stats. 1990, ch. 79, § 14, pp. 463, 934.) The current version of section 15403 continued former section 15403 without change. (Stats. 1990, ch. 79, § 14, pp. 463, 934; 54 West's Ann. Prob. Code (1991 ed.) foll. § 15403, p. 576.)

[7] While the petition to modify was pending in the probate court, the Attorney General filed a statement of "No Position." After appellants filed their notice of appeal, however, the Attorney General filed a "Consent to Modification of Trust" in the probate court. Citing *Holt v. College of Osteopathic Physicians & Surgeons* (1964) 61 Cal.2d 750, 754 [40 Cal.Rptr. 244, 394 P.2d 932], the Attorney General stated that he represents the People of the State of California, the ultimate beneficiaries of charity, and that he thereby gave all beneficiaries, named and unnamed, representation in the modification proceeding. By consenting to the modification on behalf of all unnamed beneficiaries, the Attorney General argued that the strictures of section 15403, subdivision (a), were satisfied. (See generally *Sherwood, supra,* 152 Cal.App.4th at p. 346.) Thus, the Attorney General has endorsed the trial court's order. We took judicial notice of the Attorney General's consent. We do not rely on it, because it was not before the probate court.

beneficiaries before considering the petition to modify. According to appellants, the rationale for this rule in section 21102 is that not all beneficiaries could consent to the modification because appellants had not yet identified all beneficiaries. Appellants urge that it was " 'a miscarriage of justice' " to modify the Trust pursuant to section 15403 without first making a determination of whether Moore had intended to amend the Trust with his Disbursement Schedule.[8]

■ We disagree. Section 21102, subdivision (a), is found within part 1 of division 11 of the Probate Code, which deals with "Rules for Interpretation of Instruments." (§§ 21101–21140.) It provides that "[t]he intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument." Section 21102 does not require a probate court to hear and decide a petition to ascertain beneficiaries before a petition to modify. The cases appellants cite do not establish otherwise. Moreover, subdivision (b) of section 21102 provides that the "rules of construction in this part apply where the intention of the transferor is *not* indicated by the instrument." (Italics added.) Here, the Trust expresses Moore's intent. The Trust states that it is to "be organized and operated exclusively for charitable purposes" and that its property is "irrevocably dedicated to charitable purposes." As a result, we must reject appellants' argument that section 21102 required the probate court to determine their petition to ascertain beneficiaries before considering respondents' petition to modify.

Moreover, section 17202 enables a probate court to "dismiss a petition if it appears that the proceeding is not reasonably necessary for the protection of the interests of the trustee or beneficiary." As stated above, "all beneficiaries" consented to the modification within the meaning of section 15403, subdivision (a). As a result, appellants' petition to ascertain beneficiaries was "not reasonably necessary for the protection" of the beneficiaries' interests. Under the facts of this case, the probate court was not required to elevate the interest of appellants, the successor trustees, in exercising their power to choose beneficiaries and allocate Trust assets over the interest of the named charitable beneficiaries in accomplishing a distribution and closure of the proceedings.

---

[8] Appellants assert a variation of this argument when they argue that until " 'all the beneficiaries' " were identified by the trustees—which might include beneficiaries from a class of "other [unnamed] charitable organization or organizations"—it was error for the probate court to authorize a section 15403 modification. We reject this point for the same reasons we reject its close cousin, which emphasized the five entities' lack of a "vested interest," as we have already explained.

---

III. *The Order Modifying the Trust Did Not Contravene Section 15403, Subdivision (b)*

As stated above, section 15403, subdivision (b) creates an exception to the general rule set forth in subdivision (a). Pursuant to subdivision (b), a court may not modify or terminate a trust where "the continuance of the trust is necessary to carry out a material purpose of the trust . . . unless the court, in its discretion, determines that the reason for doing so under the circumstances outweighs the interest in accomplishing a material purpose of the trust." (§ 15403, subd. (b).)

Here, the probate court determined that there was "no material purpose of the [T]rust which would necessitate its continuance beyond the distributions to those beneficiaries." Appellants contend the court was incorrect and that the modification contravenes section 15403, subdivision (b). According to appellants, the modification "impaired" a material purpose of the Trust, specifically, their "broad discretion" to identify beneficiaries and to distribute the Trust to those beneficiaries. Respondents disagree and argue that appellants' discretion was not a material purpose of the Trust.

Assuming for the sake of argument that appellants' discretion is a material purpose, the reasons for modifying the Trust clearly outweigh the interest in permitting appellants to exercise their discretion.[9] Moore created the Trust with the intent that his estate would be "dedicated to charitable purposes." The Trust directed the trustees to "distribute the trust estate as provided in Article V of this trust," specifically, to make distributions to the beneficiaries "over a reasonable period of time as determined in the Trustees' discretion." Moore died in April 2003. Over five years have passed since his death, and not a penny of his estate has been "dedicated to charitable purposes" or distributed to charitable organizations. While we are mindful that appellants spent much of the intervening time litigating with Marsha, we also recognize that remanding this case to the probate court to permit appellants to identify beneficiaries and determine whether the Disbursement Schedule amended the Trust would be costly and time consuming; it would further delay the distribution of an estate likely to be further diminished by litigation expenses. The modification unquestionably accomplishes Moore's overriding goal of dedicating the Trust to charity.

---

[9] Because we reach this conclusion, we need not determine whether appellants' discretion is a "material purpose" of the Trust. We note, however, that section 15403 does not define "material purpose." The parties have not cited, and we have not found, any cases defining "material purpose" in the context of section 15403.

Appellants' reliance on *Estate of Gilliland* (1974) 44 Cal.App.3d 32, 40 [118 Cal.Rptr. 447] (*Gilliland*) does not alter our conclusion. In that case, the decedent's nieces and nephews reached an agreement with various charities to distribute the decedent's estate. (*Id.* at p. 36.) The probate court approved the agreement, concluding that it was in the "best interests" of the trust to approve the agreement. (*Ibid.*) The trustees appealed, contending that "the probate court committed error in approving the . . . agreement made without their consent, which would result, if executed, in a substantial modification of the trust as created in the will without recognizable justification for such modification." (*Ibid.*)

The appellate court agreed and reversed the order approving the settlement. (*Gilliland, supra*, 44 Cal.App.3d at p. 36.) The *Gilliland* court explained that " ' "the [probate] court should not permit a deviation simply because the beneficiaries request it where the main purpose of the trust is not threatened and no emergency exists or is threatened," [citation], for the power to modify a trust must be exercised "sparingly and only in the clearest of cases" [citation]. Deviation is not justified merely because it would be more advantageous to the beneficiaries or would offer an expedient solution to problems of trust management.' " (*Id.* at p. 37, quoting *Crocker-Citizens National Bank v. Younger* (1971) 4 Cal.3d 202, 211 [93 Cal.Rptr. 214, 481 P.2d 222].) *Gilliland* is inapposite for two reasons. First, it was decided before section 15403 was enacted and, as a result, it is of limited value here. Second, and unlike *Gilliland*, there were "recognizable justification[s]" for the modification at issue here, specifically avoiding the cost, delay, and potential for further litigation associated with permitting appellants to exercise their discretion to select different or additional beneficiaries.

■ By impliedly concluding that the reasons for the modification outweighed the interest in accomplishing a material purpose of the Trust, the probate court did not—as appellants argue—"inappropriately put expediency ahead of the principles of trust law embodied in . . . section 15403." The probate court simply concluded that the time had finally come to honor Moore's intent and distribute his estate to charity. Section 15403, subdivision (b) "gives the court some discretion in applying the material purposes doctrine . . ." and was "intended to provide some degree of flexibility in applying the material purposes doctrine in situations where transfer of the beneficiary's interest is not restrained." (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code, *supra*, foll. § 15403, p. 576.) The probate court properly exercised its discretion here.

## DISPOSITION

The order modifying the Trust is affirmed. Respondents are awarded costs on appeal.

Needham, J., and Dondero, J.,* concurred.

---

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.