Filed 11/13/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| SONIA GODOY et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> LETICIA LINZNER, as Trustee, etc., <br><br> Defendant and Appellant. | B330725 <br><br> (Los Angeles County <br> Super. Ct. No. 21STPB08536) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael C. Small, Judge. Affirmed.

Westlake Law Group, Law Office of David A. Esquibias and Davis A. Esquibias for Defendant and Appellant.

Oldman, Sallus & Gold and Nathan M. Talei for Plaintiffs and Respondents.

———————————————

## INTRODUCTION

Silvia Villareal named her three children, Leticia Linzer, Arturo Villareal, and Sonia Godoy, as the beneficiaries of her living trust, the assets of which included her long-time home. Upon her death, each sibling was to receive a one-third fee simple interest in the home. In her last amendment to the trust instrument, however, Silvia decreed the siblings could only sell their respective shares for an amount well below the market value and only to each other, citing her desire to keep the home in the family. After Silvia passed, Arturo and Sonia petitioned the probate court, in part, for an order determining the trust instrument unreasonably restrained their ability to alienate their interests in the real property. Over Leticia's objection, the court granted Arturo and Sonia's requested relief and declared the amendment void. Because Silvia's amendment imposed an unreasonable restraint on alienation in violation of Civil Code section 711, we affirm the probate court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Trust Instrument*

In 2005, Silvia Villarreal created a revocable living trust by a declaration of trust, which she subsequently amended twice. In 2018, with the assistance of an attorney, she amended and restated the trust instrument (2018 restatement). The 2018 restatement stated that the trust's purpose was two-fold: first, to provide for the support of Silvia while she was alive; and second, "to provide for the distribution of the trust property, after [Silvia's] death, to [Silvia's] children or their issue," to enable them "to live productive and meaningful lives." In 2019, without

the assistance of an attorney, she again amended the trust instrument with a handwritten document (2019 amendment).

According to the 2018 restatement, the trust assets included the real property in Cerritos where Silvia resided (the Property). A provision entitled "Special Gift of the family residence," under the article governing "Distributions After [Silvia's] Death," provided that on Silvia's death, the trustee was to distribute the Property to Arturo, Sonia, and Leticia. The siblings were each to receive an undivided one-third interest, as tenants in common, of all of Silvia's interest in the Property. Silvia requested "the children retain this real property for a minimum of five years after the date of [her] death," suggesting they "could also consider selling/buying the property to/from a sibling or to one or more of [her] grandchildren." The 2018 restatement emphasized that these "requests and suggestions" were "precatory and not mandatory." The "vesting of interests" pursuant to the terms of the trust instrument was "as of the date of [Silvia's] death."

The 2019 amendment stated that Silvia "would like to add the following" language to her "will/living trust": "With the intention of leaving my house to my kids (Sonia, Arturo, and Leticia) which I worked all my life for, my legacy [and] my wish, is to keep the house as a place for all three of my children to enjoy, live and prosper and not to be sold or given outside of a [*sic*] family." Below that line, she included four clauses that read in full as follows: "(A) Should any one of my children [Sonia, Arturo, or Leticia] upon my death or in the future wish to sell their portion they must to [*sic*] offer it for 100,000 (one hundred thousand doll.) to each other. [¶] (B) They must be flexible in received [*sic*] the purchase if it takes one to ten years (1-10

3

years).  [¶]  (C) If the sibling chooses to split the payments of the property 50% and 50% it is equal shares, it is my wish to do so. [¶]  (D) My wish is for this home to be in the family, no outsiders. No dispute or adversary behavior among my children take place. Therefore, no contesting of my will/trust and this document.  It is a gift."

B.    *Arturo and Sonia's Petition*

When Silvia passed away in November 2020, Leticia became trustee under the terms of the trust instrument.  A probate referee valued the Property at $1,050,000 at the time of Silvia's death and $1,300,000 as of December 2022.

In September 2021, Arturo and Sonia filed a petition under Probate Code section 17200, seeking a determination whether Silvia's "wishes" in the 2019 amendment as to the Property were precatory or mandatory.  If the wishes were mandatory, Arturo and Sonia asked the probate court to modify the trust instrument by striking the 2019 amendment because its language imposed an unreasonable restraint on alienation under Civil Code section 711 (section 711).  Arturo and Sonia also sought an order compelling Leticia, as trustee, to sell the Property on the open market and equally distribute the proceeds, as well as an order instructing her to not use trust assets to purchase their interests.

Leticia objected to each of these requests.  Relevant here, Leticia asserted that section 711 did not apply to testamentary gifts of real property, and that in any event the 2019 amendment did not impose an unreasonable restraint on alienation under section 711.  Leticia also asserted that in executing the 2019 amendment, Silvia revised the trust instrument to create a new testamentary trust to hold the Property and lawfully limit the siblings' ability to sell their interests in the Property.

4

The probate court determined Silvia's wishes in the 2019 amendment were mandatory, not precatory. The court also agreed with Arturo and Sonia that section 711's prohibition of unreasonable restraints on alienation applied to real property transferred through testamentary instruments. The court further determined the 2019 amendment unreasonably restrained alienation by precluding an open market sale of the Property at its fair market value. Based on that determination, the court declared the 2019 amendment was void and the 2018 restatement was the operative trust document.

The court declined at that juncture to compel Leticia to sell the Property and distribute the proceeds. The court set a future date for consideration of that request to afford Arturo and Sonia time to attempt to sell their interests to family members for fair market value to honor Silvia's precatory wish in the 2018 restatement that the Property remain in the family.

Leticia timely appealed.

## DISCUSSION

Leticia contends the probate court erred in concluding that Silvia's wishes in the 2019 amendment impermissibly restrained the siblings' rights to sell their interests in the Property. She contends (1) the prohibition of unreasonable restraints on alienation under section 711 does not apply to testamentary instruments, and (2) any restraint on alienation in the 2019 amendment was reasonable. Alternatively, she contends the 2019 amendment placed the Property into a new testamentary trust, in lieu of the outright distribution of an absolute one-third fee simple interest to each sibling granted by the 2018 restatement. We review each of these issues de novo. (*Burch v. George* (1994) 7 Cal.4th 246, 254, superseded by statute on other

5

grounds as stated in *Estate of Rossi* (2006) 138 Cal.App.4th 1325, 1331-1332, 1339; *Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.) But first we address Arturo and Sonia's contention that this appeal was not taken from an appealable order.

A.     *The Probate Court's Order Was Appealable*

An appeal may be taken from any order made appealable by the Probate Code. (Code Civ. Proc., § 904.1, subd. (a)(10); *Boys & Girls Club of Petaluma v. Walsh* (2008) 169 Cal.App.4th 1049, 1057.) Probate Code section 1304, subdivision (a), provides that any "final order" under Probate Code section 17200 is appealable, with two exceptions not relevant here. (See *Esslinger v. Cummins* (2006) 144 Cal.App.4th 517, 522.) Probate Code section 17200 states a beneficiary may petition the court concerning the internal affairs of a trust, which includes the construction of the trust instrument, the validity of the trust provisions, and requests for modification of the trust. (Prob. Code, § 17200, subds. (a), (b)(1), (3) & (13).)

Arturo and Sonia filed their petition under Probate Code section 17200, seeking, amongst other relief, a determination that the 2019 amendment imposed an unreasonable and thus void restraint on alienation. The probate court granted the requested relief by construing the trust instrument, assessing the validity of its provisions, striking the 2019 amendment, and deeming the 2018 restatement the operative trust instrument. Because those rulings fell within Probate Code sections 17200, subdivision (b)(1), (b)(3), and (b)(13), the order is appealable. (See *Boys & Girls Club of Petaluma v. Walsh*, *supra*, 169 Cal.App.4th at p. 1057 ["An order '[a]pproving or directing the modification or termination of the [T]rust' constitutes a final order under [Probate Code] section 17200. (§ 17200, subd.

6

(b)(13).) The order modifying the Trust is therefore appealable."].)

Arturo and Sonia contend that because the court's ruling did not resolve all issues in their petition, it was not a final order under Probate Code section 1304, subdivision (a), and therefore is not appealable. They are correct that the court did not address, but rather postponed, consideration of their request that the probate court order Leticia to sell the Property on the open market and distribute the proceeds. However, unlike civil appeals, which generally are governed by the "one final judgment" rule (*Wilson v. County of San Joaquin* (2019) 38 Cal.App.5th 1, 7), appeals can properly be taken under the Probate Code from a variety of orders issued at different junctures during the administration of a probate estate. (See *Estate of Callnon* (1969) 70 Cal.2d 150, 156 [" '[t]he administration of a decedent's estate involves a series of separate proceedings, each of which is intended to be final' "]; Ross et al., Cal. Practice Guide: Probate (The Rutter Group 2019) ¶ 3:3 [probate "is a continuous proceeding" that "involves a series of stages, each of which may result in an appealable order or judgment"].) Thus, a probate order may be appealable as a final order even if it did not fully dispose of every issue raised in a petition under Probate Code section 17200. (See, e.g., *Gridley v. Gridley* (2008) 166 Cal.App.4th 1562, 1586-1587 [determination of the scope of judicial authority to adjudicate parts of a section 17200 petition was a final appealable order even if the petition's adjudication remained].) The court's order here determining issues within the ambit of Probate Code section 17200 was properly appealable as a "final order" under Probate Code section 1304, subdivision (a), even though some requests in Arturo and

Sonia's petition had not yet been addressed.

B.  *Section 711 Applies to Testamentary Conveyances of Fee Simple Interests*

Leticia contends the probate court erred in striking as void the 2019 amendment on the ground that it violated section 711, which prohibits restraints on alienation of fee simple property interests.  Leticia's first contention is that section 711 does not apply when property interests were passed by a testamentary instrument like a will or a trust instrument.  Leticia is mistaken.

"Alienation in real property law has been defined as 'the transfer of the property and possession of lands, tenements, or other things, from one person to another.' " (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 355 (*Carma Developers*).)  The right to freely alienate one's property "is an inherent and inseparable quality of an estate in fee simple." (*Title Guarantee & Trust Co. v. Garrott* (1919) 42 Cal.App. 152, 160; see *Hagge v. Drew* (1945) 27 Cal.2d 368, 376 ["A fee simple title is one that is inheritable and the holder has the power to transfer."].)  Thus, as a general rule, if property is conveyed in fee simple but is subject to a condition restraining its alienation, the conveyance is valid but the condition is not. (*Bonnell v. McLaughlin* (1916) 173 Cal. 213, 215-216; *Hart v. Gould* (1953) 119 Cal.App.2d 231, 236-237; *Wharton v. Mollinet* (1951) 103 Cal.App.2d 710, 713 (*Wharton*); see 12 Witkin, Summary of Cal. Law (2017) Real Property, Rule Against Restraints, § 201; 61 Am.Jur. 2d (Aug. 2024 Update) Perpetuities and Restraints on Alienation, § 96 ["In many cases in which there is an invalid restraint on alienation, the validity of the estate is not destroyed, but instead, the courts adjudge the limitation as a nullity and permit the estate to vest freed from

8

the condition or limitation attempted to be imposed."], fn. omitted.)  If the restraining condition were allowed to exist, such that the right of free alienation was encumbered, " 'the estate granted would be neither a fee-simple nor any other estate known to the law.' " (*Murray v. Green* (1883) 64 Cal. 363, 367 (*Murray*).)  In other words, " 'a fee-simple estate and a restraint upon its alienation cannot in their nature co-exist.' " (*Ibid.*)  To resolve this inherent conflict, the law identifies the restraining condition as "repugnant" to the fee simple interest and renders it void.  (*Id.* at pp. 366-367.)

This rule arose from common law and is codified in section 711, which broadly states:  "Conditions restraining alienation, when repugnant to the interest created, are void."  (See *Carma Developers*, *supra*, 2 Cal.4th at pp. 355, 358; *Murray*, *supra*, 64 Cal. at p. 366; *Wharton*, *supra*, 103 Cal.App.2d at p. 713.)  The statute embodies the public policy notions that free alienability fosters productive use of real property in society, provides a balance between the satisfaction of the desires of the present and future generations to tie up property, and promotes greater control of property by living members of society as opposed to excessive "dead hand control."  (See 3 Simes & Smith, The Law of Future Interests (Feb. 2024 Update) § 1117; accord, Rest.2d Property, Donative Transfers, div. 1, pt. 1, Introductory Note ["the social interest in preserving property from excessive interference with its alienability rests partly upon the necessities of maintaining a going society controlled primarily by its living members, partly upon the social desirability of facilitating the utilization of wealth, and partly upon the social desirability of keeping property responsive to the current exigencies of its current beneficial owners"].)

Despite the statute's broad language, courts have recognized that section 711 prohibits only *unreasonable* restraints on alienation.  (*Carma Developers*, *supra*, 2 Cal.4th at p. 355; *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1376.)  Reasonableness is assessed by weighing the justification for a particular restraining condition against the quantum of restraint the condition actually imposes.  (*Carma Developers*, at p. 356.)  In the context of a conveyance of a fee simple interest, the condition is likely to be unreasonable—and thus void under section 711— because any restraint on alienability defeats the purpose of the interest created.  (See *Murray*, *supra*, 64 Cal. at p. 367 ["It is difficult to conceive of a condition more clearly repugnant to the interest created by a grant of an estate in fee-simple than the condition that the grantee shall not alien the same without the consent of the grantor."]; cf. *Carma Developers*, at pp. 358-359 [a restraint on alienation is "less likely to be considered repugnant" when the interest created is a leasehold because a lease "is limited in duration and scope and is therefore already less alienable than a fee estate"].)

While Leticia does not dispute these basic principles, she contends testamentary instruments fall outside the reach of section 711 because testators should be permitted to impose whatever restrictions they want on property they gift to their heirs.  She also suggests that the public policy preference for free alienation in a commercial setting is inapposite in the context of family property.

There is relatively little California case law addressing the application of section 711 to testamentary instruments.  But that which does exist indicates the statute does apply.  For instance,

10

in *Wharton*, *supra*, 103 Cal.App.2d at page 713, the court determined a clause in a will that prevented the sale of devised property for a period of 20 years was void under section 711.[1] The court explained the restraint was "inconsistent with and repugnant to" the fee simple interest the will created and conveyed. (*Wharton*, at p. 713.) The court continued, "The right to own property in fee simple, but with a restricted right to sell it, cannot be created either by deed or by agreement. Any such restriction of the right of alienation in an instrument conveying a title in fee simple is void, and the void provision is separable from the title created. [Citations.] Such a limitation on a fee simple estate can no more be created by a will than by a deed." (*Ibid.*; see *Reagh v. Kelley* (1970) 10 Cal.App.3d 1082, 1098-1099 (*Reagh*) [if a trust instrument restrains alienation, the restriction is void and shall be separated from the title], citing *Wharton*, at p. 713; accord, *In re Estate of Campbell* (1906) 149 Cal. 712, 717 ["If the will vests in any person the present title to any interest or estate, other than in trust, a provision directly or indirectly restraining such person from alienating it, would be repugnant to the particular interest created, and consequently void."].)

Decisions from other jurisdictions have consistently held that restraints on alienation are void where a testamentary

---

[1] *Wharton* was criticized in *Wogman v. Wells Fargo Bank & Union Trust Co.* (1954) 123 Cal.App.2d 657, 663-664, because the former case arose from a collateral attack on the validity of a trust after the probate court had entered a decree of distribution that conclusively established the trust's validity. While Leticia makes much of this criticism, it is not relevant here given that *Wogman* did not criticize *Wharton*'s section 711 analysis, and the instant case does not share the criticized procedural posture of *Wharton*.

11

instrument transfers a fee simple interest.  (See, e.g., *Potter v. Couch* (1891) 141 U.S. 296, 315; *In re Estate of Vera E. Cawiezell v. Coronelli* (Iowa 2021) 958 N.W.2d 842, 845, 848; *Lowther v. Stolba (In re Estate of Stolba)* (Okla.Civ.App. 2019) 446 P.3d 528, 533; *Kennewick Pub. Hosp. Dist. v. Hawe* (Wash.Ct.App. 2009) 214 P.3d 163, 167; *Hankins v. Mathews* (Tenn. 1968) 425 S.W.2d 608, 611; *Andrews v. Hall* (Neb. 1953) 58 N.W.2d 201, 203; *Bardfeld v. Bardfeld* (N.J.Super.Ct.Ch.Div. 1952) 92 A.2d 854, 857; *In re Estate of Hayward* (Ariz. 1941) 110 P.2d 956, 960; *Lathrop v. Merrill* (Mass. 1910) 92 N.E. 1019, 1020; *Johnson v. Preston* (Ill. 1907) 80 N.E. 1001, 1006; *McIntyre v. McIntyre* (Pa. 1889) 16 A. 783, 784-785; *Anderson v. Cary* (1881) 36 Ohio St. 506, 517; *Mandlebaum v. McDonell* (1874) 29 Mich. 78, 87-91; *Twitty v. Camp* (1866) 62 N.C. 61, 62; *Roosevelt v. Thurman* (N.Y.Ch. 1814) 1 Johns.Ch. 220, 228; see also Rest.2d Trusts, § 153(2) ["If the beneficiary is entitled to have the principal conveyed to him immediately, a restraint on the voluntary or involuntary transfer of his interest in the principal is invalid."]; Bogert et al., The Law of Trusts and Trustees (June 2023 Update) § 220 ["[a] restraint in an inter vivos transfer or in a will providing that the transferee has no power to alienate the fee or absolute interest conveyed to him is generally held void as either repugnant to the interest granted or as being against public policy of freedom of alienation"]; 61 Am.Jur. 2d, *supra*, Perpetuities and Restraints on Alienation, § 88 ["the law prohibits enforcement of unreasonable restraints on alienation of real property, and a restraint on alienation, whether by deed or will, is unlawful and void"], fn. omitted.)

We agree with Arturo and Sonia that the prohibition of restraints on alienation, as codified in section 711, applies

regardless of the method in which a fee simple interest is conveyed, because a restraining condition is antithetical to the created fee simple interest and its inherent right of free alienation. (See *Potter v. Couch*, *supra*, 141 U.S. at p. 315 ["In a devise of land in fee-simple . . . a condition against all alienation is void, because repugnant to the estate devised."].) Nor does any exception apply where the purpose of the settlor's intended restraints on alienation is to keep the property within the family. (See Rest.2d Property, Donative Transfers, § 4.1, reporter's notes ["Disabling restraints which seek to limit alienation to a member of a small group are void by well settled authority."]; Bogert, The Law of Trust and Trustees, *supra*, § 220, fn. 11 [compiling cases from other jurisdictions that have found restraints invalid if they prohibit alienation except to a small class of named persons]; 61 Am.Jur. 2d, *supra*, Perpetuities and Restraints on Alienation, § 99 ["a deed or will which vests in the grantee or devisee the title in fee cannot validly impose, either as a condition or as a simple provision, a restraint against alienation to anyone other than some person or persons designated, or those of a class, such as members of the testator's family"], fn. omitted; see, e.g., *Baskin v. Commerce Union Bank of Rutherford Cnty.* (Tenn.Ct.App. 1986) 715 S.W.2d 350, 351, 354 [provision in will that plots of land could not be "traded, sold, given away or in any way disposed of except between my children or grandchildren" for 20 years was void as an unreasonable restraint on alienation]; *Berry v. Kimbrough* (Ala. 1957) 92 So. 2d 20 [where settlor intended to limit the heirs' right of alienation to nine family members only, the provision was void]; *In re Jeromos' Will* (N.Y.Sur.Ct. 1957) 9 Misc. 2d 294, 295 ["The attempt of the testatrix to limit her son's power of alienation to a specific person [the son's daughter]

13

is void as repugnant to the nature of the estate created."]; *Early v. Tayloe* (N.C. 1941) 13 S.E.2d 609, 610 [testator's request that "his home and farm should be and remain the property of his children, grandchildren, and their children and so on, 'and is not to be conveyed out of the family,' " was void as a restraint on alienation].)  Under these circumstances, the conveyance is preserved but the created interest is not subject to the void condition.  (*Reagh, supra*, 10 Cal.App.3d at p. 1099.)

Leticia does not provide any contrary authority.  Instead, she relies on two cases concerning challenges to the validity of a no-contest clause in a will.  (*Colburn v. Northern Trust Co.* (2007) 151 Cal.App.4th 439 (*Colburn*); *Tunstall v. Wells* (2006) 144 Cal.App.4th 554 (*Tunstall*).)  In each case, the court upheld the clause as valid while rejecting various arguments that it violated public policy because it prevented challenges to a testamentary distribution.  (*Colburn*, at pp. 442, 450-452; *Tunstall*, at pp. 558, 563-564, 570.)  In so doing, both courts emphasized that testators have the right to distribute their property as they see fit, and a court must not rearrange a testamentary distribution simply because a challenger perceives it as unfair.  (*Colburn*, at p. 451, fn. 9; *Tunstall*, at pp. 565-566.)  Leticia points to that rationale as the basis for excluding testamentary instruments from section 711's application.  She contends that just like the no-contest clauses in *Colburn* and *Tunstall*, the terms of the 2019 amendment should be upheld as valid because they reflect Silvia's intentions for the distribution of her estate.

But Leticia's argument misses a critical point that distinguishes *Colburn* and *Tunstall*.  The Probate Code specifically sanctions no-contest clauses, which case law has

14

recognized are favored by the public policy interests of discouraging litigation and giving effect to the testator's intent. (*Tunstall, supra*, 144 Cal.App.4th at p. 471; see Prob. Code, §§ 21310-21315.) As the authorities cited above show, the same cannot be said for restraints on alienation. Moreover, as the *Tunstall* court explained, a testator has " 'the right to distribute his property upon such terms and conditions as to him seem just and proper; and the recipient of the testator's bounty is required to partake thereof under the terms provided in the testamentary document, *so long as such terms and conditions are not prohibited by some law or opposed to public policy.*' " (*Tunstall*, at p. 565, italics added.) Subjecting a fee simple interest to an unreasonable restraint on alienation is both prohibited by law and contrary to public policy.

In sum, section 711 applies to testamentary instruments, including the one at issue here.

C.   *The 2019 Amendment Contains an Unreasonable Restraint on Alienation and Is Void*

Section 711 only invalidates *unreasonable* restraints on alienation. (See *Carma Developers*, *supra*, 2 Cal.4th at p. 355.) As discussed, when a restraint on alienation encumbers a fee simple interest, the restraint is typically unreasonable because it tends "to defeat the very purpose of the interest created." (*Id.* at pp. 358-359; see *Murray*, *supra*, 64 Cal. at p. 367.) Such is the case here. The trust instrument conveyed the Property in fee simple, which vested the siblings with the right to freely alienate their respective interests. But that right is sabotaged by the language in the 2019 amendment restricting any sale of the interests to $100,000 and only amongst the siblings.

15

Even if those restrictions are not per se void, a weighing of the quantum of restraint and its justification counsels against their enforcement. (*Carma Developers*, *supra*, 2 Cal.4th at p. 356 [" '[T]he greater the quantum of restraint that results from enforcement of a given clause, the greater must be the justification for that enforcement.' "].) Although the 2019 amendment does not completely foreclose all alienation, the probate referee's valuations of the Property—$1,050,000 at the time of Silvia's death and $1,300,000 as of December 2022—indicate the siblings stood to lose hundreds of thousands of dollars if forced to limit a sale of their one-third interests to $100,000. The quantum of restraint is even greater considering a sale could be made in a market of only two possible purchasers. While Silvia meant for these restrictions to ensure the Property stayed in the family, that justification—even if legitimate and well-intentioned—does not overcome the heavy presumption in favor of alienability. Thus, the probate court did not err in declaring the 2019 amendment void as an unreasonable restraint on alienation of the siblings' respective interests in the Property.

D.    *The 2019 Amendment Did Not Create a New Testamentary Trust*

Leticia makes an alternative argument that the 2019 amendment created a testamentary trust to hold the Property for the benefit of Silvia's three children and extended family, thus replacing the 2018 restatement's distribution of the Property to the children in equal shares as tenants in common with unfettered rights to sell their shares. She contends the conditions imposed by Silvia through the 2019 amendment constitute proper terms of the new testamentary trust, not unlawful restraints on alienation. Leticia is again mistaken.

16

1. *Legal standards for creating a trust and interpreting a trust instrument*

A trust is an arrangement where " 'property is transferred with an intention that it be held and administered by the transferee (trustee) for the benefit of another . . . .' " (*Presta v. Tepper* (2009) 179 Cal.App.4th 909, 914.) "A trust is created by a manifestation of intention of the settlor to create a trust, trust property, a lawful trust purpose, and an identifiable beneficiary." (*Chang v. Redding Bank of Commerce* (1994) 29 Cal.App.4th 673, 684; Prob. Code, §§ 15201-15205; see also *Higgins v. Higgins* (2017) 11 Cal.App.5th 648, 661 [" '[N]o particular language or terminology is necessary to create a trust; nor need the word "trust" or "trustee" be used.' "].) To create a valid trust, " '[t]he declaration of trust . . . must be reasonably certain in its material terms; and this requisite of certainty includes the subject-matter or property embraced within the terms, the beneficiaries or persons in whose behalf it created, the nature and quantity of interests which they are to have, and the manner in which the trust is to be performed.' " (*Reagh*, *supra*, 10 Cal.App.3d at p. 1089.)

One way to create a trust is through a "transfer of property by the owner, by will or by other instrument taking effect upon the death of the owner, to another person as trustee." (Prob. Code, § 15200, subd. (c).) Although the owner of property may not "take from a fee simple estate its inherent alienable quality, and still transfer it as a fee simple," the owner "may restrain or limit its enjoyment by trusts." (*Anderson v. Cary*, *supra*, 36 Ohio St. at p. 517; see *In re Estate of Campbell*, *supra*, 149 Cal. at p. 717 [recognizing that property held in trust may be subject to restraints on alienating it].)

In construing testamentary instruments, the court's duty is to ascertain and, if possible, give effect to the trustor's intent. (Prob. Code, § 21102; *Newman v. Wells Fargo Bank* (1996) 14 Cal.4th 126, 134; *Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1206; see *Burkett v. Capovilla* (2003) 112 Cal.App.4th 1444, 1450 ["The same rules of construction apply to a trust as to a will."].)  We consider the instrument's plain language, interpreting words in their ordinary and grammatical sense, unless a different interpretation can be clearly ascertained. (Prob. Code, § 21122; *Huscher v. Wells Fargo Bank* (2004) 121 Cal.App.4th 956, 972.)  In so doing, we attempt to ascertain the settlor's intent from the whole of the testamentary instrument, if possible, and not from separate parts of it.  (Prob. Code, § 21121; *Newman*, at p. 134; *Estate of Rossi* (2006) 138 Cal.App.4th 1325, 1340.)

" 'The interpretation of a written instrument, including a [trust instrument], presents a question of law unless interpretation turns on the competence or credibility of extrinsic evidence or a conflict therein.  Accordingly, a reviewing court is not bound by the lower court's interpretation but must independently construe the instrument at issue.' " (*Scharlin v. Superior Court* (1992) 9 Cal.App.4th 162, 168; accord, *Newman v. Wells Fargo Bank, supra,* 14 Cal.4th at p. 134.)

"The presumption that the holder of legal title owns the full beneficial interest in the property may be overcome only by clear and convincing evidence." (*Livernois v. Brandt* (1964) 225 Cal.App.2d 301, 306; see *Estate of Beauchamp* (1967) 256 Cal.App.2d 563, 567 ["[W]here an absolute estate has been conveyed by a will, that estate will not be limited by subsequent words unless they indicate as clear an intention therefor as was

shown by the words creating the estate."]; see also *Beeler v. American Trust Co.* (1944) 24 Cal.2d 1, 7; *Develop-Amatic Engineering v. Republic Mortgage Co.* (1970) 12 Cal.App.3d 143, 148.)

> 2. *Leticia has not shown Silvia intended to create a new testamentary trust*

The 2018 restatement grants "all of [Silvia's] interest" in the Property to the three siblings. Although Leticia admits this language provided for a conveyance of fee simple interests, she argues the 2019 amendment eliminated each sibling's entitlement to an immediate, absolute one-third beneficial interest in the Property and instead placed the Property into a testamentary trust for the benefit of Silvia's children and broader family. She asserts that to create this separate trust no more was required than Silvia's commands that "a child wishing to sell [his or her share of the Property] must offer it for $100,000 to the others, they must be flexible in the payment, they can split the payment, and the property is to be in the family."

Setting aside the question whether the language of the 2019 amendment provides the "requisite of certainty" about the terms of a separate trust holding the Property for the benefit of the family (*Reagh, supra,* 10 Cal.App.3d at p. 1089), Leticia cannot show by "evidence that is clear, satisfactory and convincing" that Silvia intended to establish this purported trust in the first instance (*Livernois v. Brandt, supra,* 225 Cal.App.2d at p. 306).

For one, in executing the 2019 amendment, Silvia did not comply with the procedures set forth in the 2018 restatement for establishing a separate trust. Those procedures specify that "each separate trust created under this instrument shall be

19

identified by the name of the trustor whose property is held in that separate trust and adding the name or designation of that separate trust as it appears in the appropriate section of this instrument." As an example, the 2018 restatement provides for the creation of a separate trust upon Silvia's death to "hold" certain property from Silvia's living trust. Shares of this "Separate Share Trust for Issue," a spendthrift trust (a concept we discuss briefly below), were to be held for the benefit of defined beneficiaries until they reached age 23. These beneficiaries could not transfer their shares of the trust property until they turned 23.

Nothing in the 2019 amendment eliminates the procedures for establishing a separate trust under the 2018 restatement. Rather, in executing the 2019 amendment, Silvia stated she wished to "add" to her trust instrument, not eliminate any of its existing provisions. But the 2019 amendment contains no language that would satisfy the trust instrument's procedures for establishing a separate trust to hold the Property. "In determining whether a trust has been created, the fact that the will discloses in other provisions that the testator knew how to make specific directions creating a trust is a matter to be considered." (97 C.J.S. (May 2024 Update) Wills § 1562; see *In re Estate of Stephano* (Pa. 2009) 981 A.2d 138, 141.) While an attorney drafted the 2018 restatement and Silvia executed the 2019 amendment on her own, her lack of adherence to the procedures nevertheless weighs against finding that Silvia intended to create a separate trust with the 2019 amendment.

More importantly, as noted, Silvia stated only that she wished to "add" to her trust instrument. To that end, she reiterated in the 2019 amendment her "intention of leaving [her]

house to [her] kids (Sonia, Arturo, Leticia)" and recognized their exclusive ability to "sell their portion" of the Property "upon [her] death or in the future." Silvia's continued recognition that the siblings could immediately sell their interests upon her death demonstrates she did not intend to replace the grant of alienable fee simple interests with a new testamentary trust to hold the Property for the benefit of her family.[2] (See *Perrin v. Lee* (2008) 164 Cal.App.4th 1239, 1248 ["The words used in the amendments in question plainly indicate the Trustor intended that, except to the extent particular terms of the Trust were specifically changed by the amendments, the remaining unchanged terms of the Trust would continue in full force and effect."].)

As discussed, because the siblings had the right to sell the Property, the limitations on whom they could sell to and for how much were impermissible, despite Silvia's intention to impose

---

[2] The three siblings' right to sell their shares immediately upon Silvia's death is to be distinguished from a beneficiary's rights under a spendthrift trust, which restrains the beneficiary from alienating his or her interest for some period of time. (See *Carmack v. Reynolds* (2017) 2 Cal.5th 844, 849 ["A spendthrift trust is a trust that provides that the beneficiary's interest cannot be alienated before it is distributed to the beneficiary."].) Spendthrift trusts, which are authorized by statute (Prob. Code, §§ 15300, 15301; *Chatard v. Oveross* (2009) 179 Cal.App.4th 1098, 1104), are recognized exceptions to the general prohibition of unreasonable restraints on alienation. (See 49 Cal.Jur.3d (Nov. 2024 Update) Perpetuities, § 26 ["As a general rule, *with the exception of restraints on alienation incident to a beneficial interest in a spendthrift trust*, all disabling restraints, that is, attempts to impose a direct restraint on the power of alienation that is repugnant to and inconsistent with the property interest granted, are void."], italics added and footnotes omitted.)

those restrictions.  (See *Estate of Lindstrom* (1987) 191 Cal.App.3d 375, 382 ["if [the settlor's] intention is inconsistent with legal rules or was not manifested in accordance with them, it cannot be given effect"].)  Because the 2019 amendment imposes an unreasonable restraint on alienation under section 711, the probate court did not err in declaring it void and ruling that the 2018 restatement was the operative trust instrument.

## DISPOSITION

The order of the probate court is affirmed.  Arturo and Sonia shall recover their costs on appeal.


STONE, J.

We concur:



SEGAL, Acting P. J.



FEUER, J.